361 So.2d 135 (1978)
William Lamar ROSE, Etc., Petitioner,
v.
PALM BEACH COUNTY, Etc., Respondent.
No. 52124.
Supreme Court of Florida.
July 13, 1978.
David H. Bludworth, State's Atty., and Stephen R. Koons and Joel M. Weissman, Asst. State's Attys., West Palm Beach, for petitioner.
*136 R. William Rutter, Jr., County Atty., and Charles P. Vitunac, Asst. County Atty., West Palm Beach, for respondent.
Robert L. Shevin, Atty. Gen., and Basil S. Diamond, Asst. Atty. Gen., West Palm Beach, for amicus curiae.
BOYD, Justice.
In the course of a criminal prosecution in Palm Beach County Circuit Court, the indigent defendant's appointed counsel moved successfully for a change of venue. This change made it necessary for the state and defense witnesses, numbering more than seventy-five, to travel from Palm Beach County to Duval County, a distance of some three hundred miles. Many of these witnesses were indigent. The prosecution asked the trial court for an order compelling the Palm Beach County Commission to make payments for the benefit of state and defense witnesses in excess of the amounts provided for witness compensation and travel expenses in Section 90.14, Florida Statutes (1975).[1] This section provides that witnesses are to receive $5.00 per day and six cents per mile. The court granted the petition and directed that the witnesses be paid $9.25 per day and 10 cents per mile. The county sought review of the order by certiorari in the District Court of Appeal, Fourth District. The district court quashed the order, holding that the circuit court judge was without authority to issue it.[2] The judge who ordered the payments now seeks a writ of certiorari to the district court. Our jurisdiction has been properly invoked in light of the fact that, pursuant to Article V, Section 3(b)(3) of the Florida Constitution, the district court has certified to this Court as a matter of great public interest the following question:
Does a trial court have inherent power to order prepayment of traveling and lodging expenses to ensure a fair trial to a criminal defendant and the state in excess of the statutory maximum of $5 a day and $.06 a mile when the witnesses are indigent?
Petitioner contends that he should have the power to go beyond the statutory amounts for witness fees and expenses since it is necessary to the performance of the special judicial function of ensuring to both the state and the accused a fair trial of the case. He asserts that this case calls into play the rights of equality before the law, due process, and compulsory process against witnesses guaranteed by sections 2, 9 and 16 respectively, of the Declaration of Rights of the Florida Constitution. Petitioner argues that the protection of these rights, in the last analysis, is the function of courts and that the power to issue the order under consideration is necessary to the performance of this function. Not only is the protection of the rights of the accused at stake, but also the interests of the state in securing a conviction of a guilty party which will not be overturned for failure of a fair trial. Frequently, the ultimate result of a clear denial of due process is freedom for the accused, who may be guilty. Therefore, argues petitioner, it is essential to the judicial function that courts have the inherent power to protect against such a denial, in the interest of both the state and the accused.[3]
*137 The respondent county commission points out that at common law there was no right in an accused to compulsory process against witnesses. It argues that the development of the right of compulsory process against witnesses has not given rise to any right in witnesses to be compensated or in those accused of crime to have their witnesses appear at public expense. The rights of witnesses to compensation and to reimbursement for expenses are purely creatures of statute.
Furthermore, argues respondent, the doctrine of inherent judicial power invoked by petitioner is a derivative of the concepts of separation of powers and judicial independence. As such, it is a very narrow doctrine positing only that courts have authority to do things that are absolutely essential to the performance of their judicial functions. Since the asserted judicial problem of ensuring for the state a fair opportunity to gain a conviction of the accused can be remedied by appropriate legislation and since the judicial function of effectuating the right of compulsory process can be performed through use of the contempt power against the subpoenaed, nonresponding witness, it is not necessary for courts to have the power to order the payment of fees and expenses of witnesses. Fees, concludes respondent, are strictly a legislative matter.
We agree with respondent that the responsibility for the adequate and efficient prosecution of violations of law is a matter lying with the policy-making branches of government. But where the fundamental rights of individuals are concerned, the judiciary may not abdicate its responsibility and defer to legislative or administrative arrangements. We agree with petitioner that this situation involves the right of an accused to compulsory process against witnesses.[4]
Every court has inherent power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction, subject to valid existing laws and constitutional provisions.[5] The doctrine of inherent judicial power as it relates to the practice of compelling the expenditure of funds by the executive and legislative branches of government has developed as a way of responding to inaction or inadequate action that amounts to a threat to the courts' ability to make effective their jurisdiction.[6] The doctrine exists because it is crucial to the survival of the judiciary as an independent, functioning and co-equal branch of government. The invocation of the doctrine is most compelling when the judicial function at issue is the safe-guarding of fundamental rights.[7]
*138 But the courts find themselves in the position of one who must play the dual role of being both a referee and a partisan participant in an athletic contest. Like the other two branches, the judiciary is interested in preserving its prerogatives and may sometimes be in an adversary position, vis-a-vis the other branches, with regard to the ongoing contest over governmental power.[8] Yet it is the judiciary that must decide upon the ultimate delineation of power. The doctrine of inherent power should be invoked only in situations of clear necessity. The courts' zeal in the protection of their prerogatives must not lead them to invade areas of responsibility confided to the other two branches. Accordingly, it is with extreme caution that this Court approaches the issue of the power of trial courts to order payments by local governments for expenditures deemed essential to the fair administration of justice. The same extreme caution should be used by trial courts in seeking solutions to practical administrative problems that have not been resolved or provided for by the Legislature.[9]
The district court reasoned that the use of the contempt power to enforce subpoenas is a workable method of effectuating the rights of the state and the accused to compulsory process against witnesses. Every citizen has a duty to respond to a subpoena regardless of statutory provisions for compensation or expenses. But this solution raises the possibility of serious practical problems. Contempt is an after-the-fact judicial tool that does not avoid disruption and delay of the trial proceedings. The costs of apprehension, incarceration, and transportation of the nonresponding witness will generally be borne by the public in any event. Moreover, to imprison an indigent person for not responding to to a subpoena ordering him to appear in court three hundred miles away would be akin to imprisonment for debt.[10] It would deprive him of liberty without due process of law as surely as would using the contempt power to compel an indigent person to make monetary payments.[11]
The amounts provided by the Legislature for witness compensation and travel expenses are probably quite adequate for the vast majority of proceedings. Ordinarily witnesses stay in their own homes and may even work part of the day on which they are testifying. Their travel expenses are minor. Even without compensation giving *139 testimony will not be a major sacrifice. When venue is changed, the fees of witnesses are paid "in like manner as if the trial had not been removed."[12] Usually the witness will only have to travel a few miles to a neighboring county, and will neither lose much working time nor require lodging for an overnight stay. It appears to us that the Legislature in making provision as it has expressed the public will with regard to trials held under normal circumstances.
If the statute is deemed to establish an absolute maximum in all situations, then it must be said to improperly infringe the prerogative of the court in effectuating the constitutional right to compulsory process.[13] If, on the other hand, the statute on witness fees is deemed merely declaratory of a guideline pertaining to a matter within the competence of the court to determine,[14] then it need not be declared an infringement. In this most unusual situation where a group of indigent witnesses had to travel three hundred miles and back and be lodged in a large metropolitan area, we construe the statute not to preclude the order entered by petitioner. Expenditure of public funds was required to protect the rights of the defendant. The order requiring payments did not conflict with the Legislature's intention to grant constitutionally sufficient criminal court trials. In this exercise of inherent judicial power we find no conflict between legislative and judicial goals in the administration of justice.
Actions taken by trial courts and purporting to be based strictly on inherent judicial authority are subject to judicial review and the burden must be on the issuing court to show that the action is necessary to enable the court to perform one of its essential judicial functions.
The decision of the district court is quashed and, subject to the qualifications set out in this opinion, the certified question is answered in the affirmative.
It is so ordered.
ADKINS, OVERTON and HATCHETT, JJ., concur.
ENGLAND, C.J., dissents with an opinion, with which SUNDBERG, J., concurs.
ENGLAND, Chief Justice, dissenting.
I respectfully dissent. The Court's decision today is wholly inconsistent with Mackenzie v. Hillsborough County, 288 So.2d 200 (Fla. 1973), in which the Court refused to increase by judicial fiat a statutory limitation on attorney's fees, saying that "if a change in the [statutory level of] compensation be called for, it is within the province of the Legislature, not the courts, to make such change." 288 So.2d at 201. This case, moreover, is particularly inappropriate for an application of the inherency doctrine. Not only has the legislature spoken directly to the subject matter of these expenses, but it apparently contemplated within the prescribed expense limitation precisely the type of occurrence (change of venue) for which the Court has now supplanted that legislative judgment. See Section 142.16, Florida Statutes (1975).
SUNDBERG, J., concurs.
NOTES
[1] Witnesses; pay.  Witnesses in all cases, civil and criminal, in all courts, now or hereafter created, and witnesses summoned before any arbitrator or master in chancery shall receive for each day's actual attendance five dollars and also six cents per mile for actual distance traveled to and from the courts.
In general, these amounts are paid by the party calling the witness. But in criminal cases when the defendant is indigent, § 914.11, Fla. Stat. (1977), provides that the costs of witnesses necessary to the defense be paid by the county. A nonindigent criminal defendant would have to pay the prescribed fees in order to subpoena witnesses, but where the defendant is not convicted, "the fees of witnesses and officers" are to be paid by the county. § 142.09, Fla. Stat. (1977).
[2] Palm Beach County v. Rose, 347 So.2d 127 (Fla. 4th DCA 1977).
[3] "Inherent powers" of courts have been described as "all powers reasonably required to enable a court to perform efficiently its judicial functions, to protect its dignity, independence and integrity, and to make its lawful actions effective. These powers are inherent in the sense that they exist because the court exists; the court is, therefore it has the powers reasonably required to act as an efficient court." Carrigan, Inherent Powers of the Courts 2 (1973). With regard to inherent power to ensure fair criminal trials, see Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966).
[4] The right of one accused of crime to compulsory process for obtaining witnesses in his favor "stands on no lesser footing than the other Sixth Amendment rights that [the United States Supreme Court has] held applicable to the States." Washington v. Texas, 388 U.S. 14, 18, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019, 1022 (1967).
[5] 8 Fla.Jur. Courts § 74 (1956). Some previous decisions of this Court indicate generally that the will of the Legislature is to prevail on the matter of compensation for court-appointed public prosecutors and defenders. Mackenzie v. Hillsborough County, 288 So.2d 200 (Fla. 1973); Strauss v. Dade County, 253 So.2d 864 (Fla. 1971); Carr v. Dade County, 250 So.2d 865 (Fla. 1971).
[6] "If the separation of powers is to be maintained, it is essential that the judicial branch of government not be throttled by either the legislative or administrative branches, and that the courts be empowered to mandate what is reasonably necessary to discharge their duties." McAfee v. State ex rel. Stodola, 258 Ind. 677, 681, 284 N.E.2d 778, 782 (Ind. 1972).

"... [T]he Judiciary must possess the inherent power to determine and compel payment of those sums of money which are reasonable and necessary to carry out its mandated responsibilities, and its powers and duties to administer Justice, if it is to be in reality a co-equal, independent branch of our Government." Commonwealth ex rel. Carroll v. Tate, 442 Pa. 45, 52, 274 A.2d 193, 197 (1971).
[7] "It is axiomatic that the courts must be independent and must not be subject to the whim of either the executive or legislative departments. The security of human rights and the safety of free institutions require freedom of action on the part of the court. Courts from time immemorial have been the refuge of those who have been aggrieved and oppressed by official and arbitrary actions under the guise of governmental authority. It is the protector of those oppressed by unwarranted official acts under the assumption of authority. Our sense of justice tells us that a court is not free if it is under financial pressure, whether it be from a city council or other legislative body, in the consideration of the rights of some individual who is affected by some alleged autocratic or unauthorized official action of such a body. One who controls the purse strings can control how tightly those purse strings are drawn, and the very existence of a dependent. Justice, as well as the security of human rights and the safety of free institutions requires freedom of action of courts in hearing cases of those aggrieved by official actions, to their injury. Carlson, et al. v. State ex rel. Stodola, 247 Ind. 631, 633-634, 220 N.E.2d 532, 533-534 (Ind. 1966).
[8] "It is incumbent upon each department to assert and exercise all its power whenever public necessity requires it to do so; otherwise, it is recreant to the trust reposed in it by the people." State ex rel. Schneider v. Cunningham, 39 Mont. 165, 168, 101 P. 962, 963 (Mont. 1909).
[9] Inherent power should be exercised only after established methods have failed or an emergency has arisen. In re Salary of Juvenile Director, 87 Wash.2d 232, 250, 552 P.2d 163, 173 (Wash. 1976). "Judges should constantly be aware that their constitutional responsibility to maintain the judicial system carries with it the corresponding responsibility to limit their requests to those things reasonably necessary in the operation of their courts and to refrain from any extravagant, arbitrary, or unwarranted expenditures." McAfee v. State ex rel. Stodola, see note 6, above.
[10] Art. 1, § 11 of the Constitution of the State of Florida provides: "No person shall be imprisoned for debt, except in cases of fraud."
[11] See, e.g., Naster v. Naster, 163 So.2d 264 (Fla. 1964).
[12] § 142.16, Fla. Stat. (1977).
[13] See Simmons v. State, 160 Fla. 626, 36 So.2d 207 (1948).
[14] "A statute which attempts to restrict the inherent powers will be broadly interpreted as laying down reasonable guidelines within which the power operates rather than as a sole or actual source of the power. See, e.g., Smith v. Miller, 153 Colo. 35, 384 P.2d 738 (1963); State ex rel. Bailey v. Webb, 215 Ind. 609, 21 N.E.2d 421 (1939); Bass v. County of Saline, 171 Neb. 538, 106 N.W.2d 860 (1960)." Carrigan, note 3, above, at 8.