439 So.2d 947 (1983)
STATE of Florida, DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellant,
v.
Lee Francis HOLLIS, et al., Appellees.
No. AL-100.
District Court of Appeal of Florida, First District.
October 13, 1983.
James A. Sawyer, Jr., Dist. III Legal Counsel, Ocala, for appellant.
No appearance for appellees.
*948 ERVIN, Chief Judge.
Appellant, the Department of Health and Rehabilitative Services (HRS), seeks reversal of an order of the lower court directing HRS to file a petition for the permanent commitment of three minor children adjudicated by the court to be dependent. HRS contends the court was without jurisdiction to enter that order and that the court's action violated Florida's Constitutional provision of separation of powers. We disagree and affirm.
The record shows that in 1979, appellee Hollis' two children were found to be dependent and were placed in foster care. The next year HRS sought permanent commitment of those children so that they might be adopted. That petition was denied and Hollis was given temporary custody of the children. Later proceedings were held and finally, on July 7, 1980, Hollis, who was then expecting her third child, was given custody subject to the terms of a stipulation with HRS in which she agreed to maintain an adequate place of residence for the children.
Hollis failed to comply with the conditions of the stipulation and, in November of 1981, the children, who were unwashed and scantily clothed despite the cold, were found to be living in squalid conditions in a house having no stove, refrigerator, bathroom, hot water, or heat. HRS again filed a dependency petition on behalf of all three children and, on December 9, 1981, the court granted that petition.
On February 8, 1982, the court, noting Hollis' complete failure to comply with the conditions under which she was granted custody of her children in 1980, concluded that further attempts to restore custody to Hollis would be useless. Accordingly, the court appointed counsel to represent Hollis and ordered HRS to commence permanent commitment proceedings by filing a petition for such commitment within 30 days.
HRS urges that the court had no jurisdiction to order it to file a petition for permanent commitment, primarily because of the doctrine of separation of powers. We must reject this argument in light of our recent opinion in In re T.G.T., 433 So.2d 11, (Fla. 1st DCA, 1983), which held that the court had the statutory power to so act. Faced in T.G.T. with a factual situation similar to that before us, we there stated:
The issue before us is whether a circuit judge may on his own motion initiate permanent commitment proceedings in a dependency proceeding. We hold that the legislature has expressly given the circuit court this power and, therefore, affirm.
Id. We find T.G.T. to be dispositive and controlling but we deem it necessary to address at this time the issue of separation of powers, an issue that was not expressly mentioned in T.G.T.
It is true that "Article II, Section 3, Florida Constitution, divides government into three separate and distinct branches of government and provides that `[n]o person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein'", and that "[t]his prohibition against legislative encroachment upon the executive's... power is equally applicable to the judiciary." Sullivan v. Askew, 348 So.2d 312, 315, 316 (Fla. 1977). Nevertheless as a practical matter, it is often difficult to delineate specifically between the three divisions, and some degree of overlap frequently exists. 10 Fla.Jur.2d Constitutional Law s. 139 (1979). For example, a number of Florida statutes delegate power over matters relating to child custody and commitment proceedings to both HRS and to the circuit courts. See generally ss. 39.001, 39.40, 39.404, 39.41, 409.168, 409.145, Florida Statutes (1981). When such an overlap of powers occurs, the legitimate exercise of powers by one branch, in this case the judiciary, cannot be said to violate the doctrine of separation of powers. Additionally, two recognized principles of law directly support the lower court's action and undermine HRS' position.
First, there is the general principle of inherent power that allows a court "to do all things that are reasonably necessary for *949 the administration of justice within the scope of its jurisdiction, subject to valid existing laws and constitutional provisions." Rose v. Palm Beach County, 361 So.2d 135, 137 (Fla. 1978). Accord Keen v. State, 89 Fla. 113, 103 So. 399 (1925); State v. City of Avon Park, 117 Fla. 565, 158 So. 159 (1934). As was stated in Rose:
The doctrine of inherent judicial power as it relates to the practice of compelling the expenditure of funds by the executive and legislative branches of government has developed as a way of responding to inaction or inadequate action that amounts to a threat to the courts' ability to make effective their jurisdiction. The doctrine exists because it is crucial to the survival of the judiciary as an independent, functioning and co-equal branch of government.
361 So.2d at 137 (trial court's authorization of excess witness and mileage payments to indigent witnesses forced to travel 300 miles to testify due to change of venue upheld). In this case, the lower court did nothing more than to exercise its inherent powers, in view of HRS' apparent inaction or inadequate action which had resulted in subjecting three children to several years of extreme neglect in the home of their biological parent as well as their placement in a foster home.
Second, the more narrow principle as it applies to this case is that "[t]he circuit court has the inherent jurisdiction and right to protect minors and their property." Phillips v. Nationwide Mutual Insurance Co., 347 So.2d 465, 466 (Fla. 2d DCA 1977). This inherent power stems from the duty of chancery courts to protect the interests of minors: "[C]hancery `is the supreme guardian, and has the superintendent jurisdiction of all the infants in the kingdom.'" Cooper v. Cooper, 194 So.2d 278, 281 (Fla. 2d DCA 1967). As we observed in Brown v. Ripley, 119 So.2d 712, 717 (Fla. 1st DCA 1960):
Independent of statute or rule a court of chancery has inherent jurisdiction and right to control and protect infants and their property, and enjoys a broad discretion in making orders protecting their welfare. Though the courts should be careful not to disturb rights which have once been properly settled, they must exert the utmost vigilance to see that the rights of so unprotected a class as that of infants are not infringed on or destroyed. The court itself is, in legal contemplation, the infant's guardian.
(e.s.) The court's inherent power extends to reviewing all pleadings filed on behalf of infants for the purpose of ensuring that all proper objections and exceptions are raised and of requiring that "the representative of such minor ... take such exceptions or file such pleadings as may be necessary to fully secure and protect such rights and interests as the minors appear by the record to have." Walker v. Redding, 40 Fla. 124, 23 So. 565 (1898) (e.s.). Accord Parken v. Safford, 48 Fla. 290, 37 So.2d 567 (1904); Parrish v. Haas, 69 Fla. 283, 67 So. 868 (1915). In view of the power conferred upon courts of equity to safeguard the rights of minors, the lower court clearly had the authority to order HRS to file a petition for permanent commitment.
AFFIRMED.
THOMPSON and NIMMONS, JJ., concur.