BASKIN, Judge.
Vincent Drost appeals from a final order entered by the Florida Department of Environmental Regulation [DER] adopting the administrative hearing officer’s recommended order and denying Drost’s application for an exemption from DER permitting requirements. We affirm.
In the 1960’s, Vincent Drost began developing upland property he owned on Cudjoe Key into a canal-front subdivision of single family homes. At that time, he did not need a permit to dredge entirely upland property. In 1969, Drost received a dredge permit to construct an additional canal on submerged land owned by the State of Florida.[1] Also in 1969, Drost received per *1155 mission to connect his canals to state waters. In 1972, the permitting authority, Florida Department of Pollution Control, modified Drost’s permit to insure that the canals would be continuous-flushing canals. Subsequently, DER became the permitting authority; in 1976, it issued Drost a permit to develop the canals and to plug the canals with concrete until the uplands excavation was complete. Drost completed his uplands excavation and removed the plugs. In 1987, Drost applied to DER for a blanket exemption from the permitting requirements of chapter 403, in accordance with section 403.918(5)(b), Florida Statutes (1985), and Rule 17-4.040(9)(f), Florida Administrative Code, to construct vertical concrete caps on canal faces.[2] The statute and the rule exempt from DER’s permitting requirements the construction of a vertical seawall within an existing man-made channel which is occupied in whole or in part by vertical seawalls or within an artificially created waterway, so long as the seawall will not violate existing water quality standards, impede navigation, or affect flood control. The exemption does not apply to construction of a seawall within a lagoon unless the proposed construction is on an existing man-made canal currently occupied in whole or in part by vertical seawalls. DER granted the blanket exemption, but excluded from the exemption the seawalls along four waterways, finding that the proposed construction would take place within a lagoon and that Drost did not demonstrate that the project was clearly in the public interest.[3]
Drost requested a formal administrative hearing. At the formal hearing, both parties presented testimony. At the conclusion of the hearing, the hearing officer entered a recommended order finding that the southern and western canals are not artificially created waterways within the exemption contained in rule 17-4.040(9)(f), Florida Administrative Code, because they were not totally dredged or excavated from uplands and because their waters overlap the natural waters of the state. The officer also found that the canals are within a lagoon. Furthermore, the hearing officer found that although the canals in question are man-made, their shorelines are not currently occupied by vertical seawalls.[4] Thus, Drost was required to obtain a permit to construct the seawalls, issuable only if section 403.918(2), Florida Statutes (1985), conditions are met. The hearing officer then found that Drost’s proposed seawalls would have an adverse impact on the wildlife existing along the seawalls, and that Drost could not show that the proposed construction would not be contrary to the public interest as required by section 403.918(2), Florida Statutes (1985). DER proposed that Drost employ, instead, a cantilevered concrete slab on concrete supports. Drost appeals DER’s final order adopting the hearing officer’s recommended order and denying his exemption. He contends that his proposed construction would not be within a prohibited lagoon and qualifies for an exemption.
An agency’s interpretation of a statute is entitled to great deference and will not be overturned unless clearly erroneous. Department of Ins. v. Southeast Volusia Hosp. Dist., 438 So.2d 815 (Fla.1983), appeal dismissed, 466 U.S. 901, 104 S.Ct. 1673, 80 L.Ed.2d 149 (1984); § 120.68(9), Fla.Stat. (1987). We must affirm an agency’s interpretation of a statute if it is supported by competent substantial evidence. *1156 Gershanik v. Department of Professional Regulation, Bd. of Medical Examiners, 458 So.2d 302 (Fla. 3d DCA 1984), review denied, 462 So.2d 1106 (Fla.1985); § 120.68(10), Fla.Stat. (1987).
Section 403.911(5), Florida Statutes (1985), defines “lagoon” as
a naturally existing coastal zone depression which is below mean high water and which has permanent or ephemeral communications with the sea, but which is protected from the sea by some type of naturally existing barrier.
At the administrative hearing, DER introduced expert testimony that, under DER’s interpretation of the definition of the word “lagoon”, the entire state of Florida is located within a lagoon.[5] Under its interpretation, no waterway would fall within the exception to section 403.918(5)(b), Florida Statutes (1985), created by section 17-4.-040(9)(f), Florida Administrative Code.[6]
We find it beyond belief that the legislature intended to define the term “lagoon” in such a broad and unworkable manner. Unreasonable or ridiculous interpretations distort fundamental principles of statutory construction and mandate the use of reasonable interpretations. See Johnson v. Presbyterian Homes of Synod of Fla., Inc., 239 So.2d 256 (Fla.1970); Realty Bond & Share Co. v. Englar, 104 Fla. 329, 143 So. 152 (1932); Ferre v. State ex rel. Reno, 478 So.2d 1077 (Fla. 3d DCA 1985), approved, 494 So.2d 214 (Fla.1986), cert. denied, 481 U.S. 1037, 107 S.Ct. 1973, 95 L.Ed.2d 814 (1987).
To determine whether DER’s position utilizes a reasonable construction of the statute, we must examine the legislature’s statement of its intent. The intent of the legislature appears in section 403.-918(5)(a), Florida Statutes (1985):
It is the intent of the Legislature to protect estuaries and lagoons from the damage created by construction of vertical seawalls and to encourage construction of environmentally desirable shore protection systems, such as rip-rap and generally sloping shorelines which are planted with suitable aquatic and wetland vegetation.
DER’s interpretation places all of the Florida Keys and Florida Bay in a “lagoon” of the Gulf of Mexico or the Atlantic Ocean. Adoption of its definition would eliminate the exemption provided by the rule and foreclose the addition of seawalls. It effectively controverts the intent of the legislature to combine the needs of the environment with appropriate development. We discern no legislative intent to eliminate environmentally compatible construction.
Despite our disagreement with DER on this point, we affirm its final ruling. Although the hearing officer’s interpretation of the term “lagoon” is clearly erroneous, his order contained alternative findings which are supported by competent substantial evidence and support his recommended order: namely, that the waterways in question are neither artificially created waterways within the exemption contained in rule 17-4.040(9)(f), Florida Administrative Code, nor man-made canals whose shorelines are occupied in whole or in part by vertical seawalls as required by section 403.918(5)(b), Florida Statutes (1985), and that Drost failed to show that the construction would be clearly in the public interest, as required by section 403.918(2), Florida Statutes (1985). For these reasons, we affirm DER’s order denying Drost’s request *1157 for a blanket exemption and for a permit to construct seawalls in the subject canals.
Affirmed.

. The legal description of that submerged land is Section 31, Township 66 South, Range 28 East, Sugarloaf Channel, Cudjoe Key.

. The area Drost proposed to exempt from permitting requirements was Sections 29-33, Township 66 South, Range 28 East, Sugarloaf Channel, Cudjoe Key. Included in the area for which DER denied exemption was the submerged land for which Drost received a dredge and fill permit in 1969.

. Drost alleges that DER applied the wrong standard of proof. We disagree. Section 403.-918(2), Florida Statutes (1985), requires an applicant to demonstrate that the project is clearly in the public interest when the project is within an outstanding Florida water. In his recommended order, the hearing officer found that Drost's project was located within an outstanding Florida water.

.The hearing officer found that although one of canals in question was connected hydraulically to a canal which did contain vertical seawalls, the canals were constructed at different times and were connected by a narrow culvert, which made them part of the same system, but not the same canal.

. In his recommended order, the hearing officer stated that Drost offered no proof to counter the testimony of DER’s expert about the definition of "lagoon”. The record belies this assertion: Drost presented testimony of two experts contradicting DER's experts.

. DER’s expert testified:
Q. Can you explain how it is this project falls within that definition of lagoon?
A. Yes, it is our interpretation or our contention that these outer shoals and reefs create an inner lagoon of Hawk Channel, which continues up to include Florida Bay, up to its north shoreline of the Everglades and Conch Channel, and that these reefs constitute that natural barrier to deeper ocean waters, and this whole system can be considered a lagoon.