641 So.2d 957 (1994)
Samantha SIMMS, a/k/a Ellen B. Simms, a/k/a Samantha Goldfinger, a/k/a Ellen Barbara Goldfinger, Appellant,
v.
STATE of Florida, DEPARTMENT OF HEALTH & REHABILITATIVE SERVICES, and Robert Christian, Guardian Ad Litem, Appellees.
No. 92-1629.
District Court of Appeal of Florida, Third District.
September 7, 1994.
*959 Rosemary B. Wilder, Fort Lauderdale, and Gail L. Grossman, Miami, for appellant.
White & Case, Stephen M. Corse, Eric S. Roth and Hillary B. Rossman, Miami, for appellees.
Virginia Lee Stanley, Miami, and Barbara Green, Coral Gables, for the Juvenile Justice Attys. Ass'n, as amici curiae.
Christina A. Zawisza and Margaret F. Zehren, Miami, for the Legal Services of Greater Miami, Inc., as amici curiae.
Young, Franklin, Berman & Karpf, Barry S. Franklin, North Miami Beach, for the Florida Chapter of the American Academy of Matrimonial Lawyers, as amicus curiae.
Robert A. Butterworth, Atty. Gen., and Louis F. Hubener, Asst. Atty. Gen., for the State of Fla., Dept. of Legal Affairs, as amici curiae.
Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, Steven M. Goldsmith and Charles M. Auslander, Miami, for the Guardian Ad Litem Programs for the First, Second, Fifth, Seventh, Eighth, Ninth, Eleventh, Twelfth, Thirteenth, Fourteenth, Fifteenth, Eighteenth, Nineteenth and Twentieth Judicial Circuits, as amici curiae.
Before SCHWARTZ, C.J., and BARKDULL, HUBBART, NESBITT, BASKIN, JORGENSON, COPE, LEVY, GERSTEN and GODERICH, JJ.
EN BANC
GERSTEN, Judge.
This is an appeal from a final order terminating the parental rights of appellant, Samantha Simms (the mother). We affirm.
Turning first to the merits of the case, we determine that the trial court's order is supported by clear and convincing evidence of the mother's severe neglect of her minor children. Parental rights can be terminated only upon a showing, by clear and convincing evidence, of neglect, abuse, or abandonment. § 39.464, Fla. Stat. (Supp. 1992); In re R.W., 495 So.2d 133, 135 (Fla. 1986).
The evidence demonstrated that the mother's neglect of the children included: inadequate medical attention necessitating her infant's hospitalization for extreme jaundice, gross malnourishment causing her infant to weigh less at nine weeks of age than at birth, and inadequate supervision leading to her child's skull fracture due to a fall from *960 a second floor apartment. Additionally, the mother failed to substantially comply with the performance agreements which she and the Department of Health and Rehabilitative Services (HRS) entered into to accomplish family reunification. § 39.467(3)(e), Fla. Stat. (Supp. 1992).
Moreover, testimony by the court-appointed psychologist, a psychiatrist and two social workers constituted clear and convincing evidence supporting the trial court's finding that the children will be neglected if returned to the mother. See Padgett v. Department of Health & Rehabilitative Servs., 577 So.2d 565, 571 (Fla. 1991). The trial court specifically found that the mother's personality disorder prevents her from meeting the ordinary and special needs of her children who require extensive medical and psychological care, and that the mother has no prospect for improvement in the foreseeable future.
Turning next to the constitutional issue this case presents, we must determine whether section 39.464, Florida Statutes (Supp. 1992), violates the doctrine of separation of powers as articulated in Article II, section 3 of the Florida Constitution. This section allows HRS, a licensed child-placing agency or a guardian ad litem to "petition for the termination of parental rights." We conclude that this statutory provision does not violate Florida's constitutional provision addressing the doctrine of separation of powers.
Factually, a lay guardian ad litem, Robert Christian, filed a petition for termination of parental rights. The petition alleged that both the mother and father's parental rights should be terminated because they abused and neglected their two minor children, ages five and six. Prior to trial, the husband voluntarily relinquished his rights to the children and the case proceeded against the mother only.
During the proceedings, HRS was represented by a pro bono guardian ad litem attorney, Stephen M. Corse, who was specially appointed through the Guardian Ad Litem Program of the Eleventh Judicial Circuit. After a nine day trial, the trial court granted the petition to terminate the mother's parental rights and entered a detailed order with specific findings of fact and conclusions of law supporting termination.
Article II, section 3 of the Florida Constitution, divides government into three separate and distinct branches and provides that "[n]o person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein." This section, known as the "separation of powers" clause, embodies one of the fundamental principles of our federal and state constitutions and prohibits the unlawful encroachment by one branch upon the powers of another branch. Chiles v. Children A, B, C, D, E, & F, 589 So.2d 260, 263-64 (Fla. 1991); Pepper v. Pepper, 66 So.2d 280, 284 (Fla. 1953).
However, separation of powers does not mean that every governmental activity is classified as belonging exclusively to a single branch of government. State v. Johnson, 345 So.2d 1069, 1071 (Fla. 1977) (citing State v. Atlantic Coast Line R.R., 56 Fla. 617, 632, 47 So. 969, 974 (1908)). The prohibition of Article II, section 3 is directed only at those powers which belong exclusively to a single branch of government. Atlantic Coast Line R.R., 56 Fla. at 631, 47 So. at 974.
The threshold issue is whether the power to protect the welfare of children and terminate a parent's rights under Chapter 39, Florida Statutes (1991), is an exclusive power of one branch of government and is therefore subject to the separation of powers clause. If it is, any exercise of that exclusive power by another branch is unconstitutional. See, e.g., State v. Bloom, 497 So.2d 2, 3 (Fla. 1986). If a power is not exclusive to one branch, the exercise of that non-exclusive power is not unconstitutional. See, e.g., Department of Health & Rehabilitative Servs. v. Hollis, 439 So.2d 947, 948 (Fla. 1st DCA 1983).
The exclusive powers of the three branches of government are generally not delineated in the Constitution or in statutes. Florida Motor Lines, Inc. v. Railroad Comm'rs, 100 Fla. 538, 544, 129 So. 876, 881 (1930). These powers are determined by *961 considering the language and intent of the Constitution as well as the history, nature, powers, limitations and purposes of our form of government. Id.; see Atlantic Coast Line R.R., 56 Fla. at 632, 47 So. at 974. Historically, the courts have possessed inherent and statutory authority to protect children. The circuit court inherited the common law jurisdiction of the courts of chancery in which minors were wards of the court and the court had inherent power to protect them. Cone v. Cone, 62 So.2d 907, 908 (Fla. 1953); Pollack v. Pollack, 159 Fla. 224, 226, 31 So.2d 253, 254 (1947); In re J.S., 444 So.2d 1148, 1149-50 (Fla. 5th DCA 1984). Section 39.40(2), Florida Statutes (1991), codifies the court's inherent power to exercise continuing jurisdiction over dependent children.
The inherent authority of the courts to protect children extends to the appointment of guardians ad litem for unrepresented children. James v. James, 64 So.2d 534, 536 (Fla. 1953). The legislature codified this inherent power in 1975, requiring the court to appoint a guardian ad litem in cases involving child abuse or neglect. § 415.508, Fla. Stat. (1991).
The fact that one branch has inherent authority does not necessarily mean that all others are excluded. Petition of Florida State Bar Ass'n, 145 Fla. 223, 227, 199 So. 57, 59 (1940). The legislature created HRS to be the executive department charged with the protection of dependent children. In re J.S., 444 So.2d at 1150. The authority of HRS to protect children stems either from its enabling act, in chapter 409, Florida Statutes (1991), see § 409.145, or a court order divesting the court's exclusively original jurisdiction. Division of Family Servs. v. State, 319 So.2d 72, 76 (Fla. 1st DCA 1975).
Indeed, a number of Florida statutes delegate overlapping and concurrent power over matters relating to child custody and commitment proceedings to both HRS and to the circuit courts. Hollis, 439 So.2d at 948; see, e.g., §§ 39.001, 39.40, 39.404, 39.41, 409.145, Fla. Stat. (1991); see generally In re J.S., 444 So.2d at 1150.
To determine whether the particular activity is an exclusive power of one branch of government, we can also consider the essential nature and effect of the governmental activity to be performed. Florida Motor Lines, Inc., 100 Fla. at 544-45, 129 So. at 881. Thus, a petition for termination of parental rights is not a criminal prosecution which must be brought and prosecuted by the state. See Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). It is a civil action initiated to protect the rights of abused, neglected or abandoned children. §§ 39.46-.474, Fla. Stat. (1991).
Neither the language and intent of the Constitution nor consideration of the history and purpose of our government indicate that the authority to protect children and to terminate parental rights is an exclusive and pure power which the Constitution requires to be confined to a single branch of government. See generally In re C.B., 561 So.2d 663, 666 (Fla. 5th DCA 1990); In re J.S., 444 So.2d at 1150; In re J.R.T., 427 So.2d 251, 252-53 (Fla. 5th DCA 1983); Hollis, 439 So.2d at 948-49. Where a power conferred by statute is not an exclusively held power exercisable only by a single branch of government, a grant of concurrent power does not violate the Constitution.
A sister court has determined that the separation of powers clause is not violated when the court orders HRS to take action on behalf of the child. Department of Health & Rehabilitative Servs. v. Brooke, 573 So.2d 363, 369 (Fla. 1st DCA 1991); Hollis, 439 So.2d at 948-49. Another court has determined that a guardian ad litem has authority to initiate proceedings for termination of parental rights. Lupinek v. Firth, 619 So.2d 379 (Fla. 5th DCA 1993). Here, we conclude that the separation of powers clause is not violated when a guardian ad litem exercises concurrent power with HRS to initiate and litigate proceedings to terminate parental rights under section 39.464.
Section 39.464 vests concurrent authority to file a petition to terminate parental rights in licensed child-placing agencies, guardians ad litem and HRS. However, this section does not expressly authorize any *962 party, including HRS, to actually litigate a termination action once filed. Fundamental principles of statutory construction require the court to ascribe a reasonable interpretation to a statute. Drost v. Department of Envtl. Regulation, 559 So.2d 1154, 1156 (Fla. 3d DCA 1989). Therefore, section 39.464 must be read to encompass the litigation of the action to its conclusion in order to effectuate the intent of the statute.
Rather than violating the separation of powers clause in enacting section 39.464, the legislature has, instead, wisely provided for the interests of the child and the State by granting concurrent power to the guardian ad litem and to HRS. As the court observed in In re J.R.T., 427 So.2d at 253, "[t]o hold that [HRS] alone could initiate termination proceedings would be to permit the agency to restrict and frustrate the inherent and statutory authority of the court to protect the welfare of minor children."
Also, there are instances in which the best interests of the child and HRS may differ. Division of Family Servs., 319 So.2d at 77; see Norris v. Spencer, 568 So.2d 1316, 1317 (Fla. 5th DCA 1990). Sharing power amongst the branches of government and the public furthers the state's compelling interest to care for those unable to care for themselves. See In re C.B., 561 So.2d at 666; see generally In re Beverly, 342 So.2d 481, 485-86 (Fla. 1977).
Because the power to protect children and terminate parental rights is not a power exclusively vested within one branch of government, section 39.464 does not violate the constitutional provision on separation of powers. Therefore, the exercise by the guardian ad litem of a power, which HRS does not hold exclusively, is constitutional. Accordingly, we affirm the order terminating the mother's parental rights.
Affirmed.
HUBBART, NESBITT, BASKIN, COPE, LEVY and GODERICH, JJ., concur.
JORGENSON, Judge, concurring in part and dissenting in part.
I fully concur in the court's decision that section 39.464, Florida Statutes (Supp. 1992), which authorizes a guardian ad litem to file a petition to terminate parental rights, does not violate the constitutional doctrine of separation of powers. I also agree that concomitant with that standing is the authority to prosecute the termination proceeding.
However, I respectfully dissent as to the merits of the proceeding, and would reverse the order terminating the mother's parental rights. Neither the quality nor the quantum of the evidence relied upon by the trial court to sever this most fundamental of human bonds meets the standard articulated by the Florida Supreme Court. "To protect the rights of the parent and child, we conclude that before parental rights in a child can be permanently and involuntarily severed, the state must show by clear and convincing evidence that reunification with the parent poses a substantial risk of significant harm to the child." Padgett v. Department of Health & Rehabilitative Servs., 577 So.2d 565, 571 (Fla. 1991). The record support for the trial court's findings of neglect and abuse[1] falls woefully short of being either clear or convincing. What the court characterizes as "clear and convincing evidence of the mother's neglect" consists primarily of disturbingly vague testimony by a social worker and a psychologist that the mother suffers from a poor sense of "self," and lacks the ability or motivation to change or to improve her parenting skills.[2] These findings are particularly disturbing because during the six years *963 that the mother has been without custody of her children, HRS denied her any meaningful opportunity to show that she was, or could be, a fit parent. In fact, Dr. Miller, the court-appointed psychiatrist, testified that the mother had no major mental disorders and would be capable of providing a safe and healthy home environment for her children.[3] Dr. Miller also testified that in his opinion, the limited visitation granted to the mother made it impossible for her to demonstrate her ability to be a parent, and that she should be given the opportunity, through more extensive visitation, to demonstrate to HRS and the court that she was capable of taking care of her children. Dr. Miller expressed no opinion as to whether Ms. Simms' parental rights should be terminated.
The record profiles a financially strapped and emotionally troubled mother. Although the "thoroughly flawed" individual who gave birth to these children may not be a good mother, that vague, "undeniable, but impertinent" underpinning, formulated from testimony best described as psychobabble, cannot form the basis of an order that severs for all time the bonds of parent and child. Caso v. Department of Health & Rehabilitative Servs., 569 So.2d 466, 471 (Fla. 3d DCA 1990) (Schwartz, C.J., dissenting).
The order terminating parental rights should be reversed.
SCHWARTZ, Chief Judge (dissenting in part).
In my view, it is a violation of the most fundamental aspect of due process  the right to a fair trial  to permit an appointee of the judiciary itself, the guardian ad litem, to prosecute an action to deprive a parent of the precious right to her child. Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); Padgett v. Department of Health & Rehabilitative Servs., 577 So.2d 565 (Fla. 1991). It may or may not be desirable that such issues be determined in a non-adversary setting. See Mize v. Mize, 621 So.2d 417 (Fla. 1993) (Barkett, C.J., concurring). Until the system is changed, however, it is, I believe, profoundly wrong for any entity but the executive to seek and advocate the deprivation of another's rights. I would reverse for a new trial in which H.R.S. is on one side, the mother on the other, and only the judge herself in the middle.[4]
BARKDULL, J., concurs.
NOTES
[1] The findings of abuse were based upon acts committed in 1987 by the father. The mother is divorced from the father and has no continuing relationship with him.
[2] The bulk of the prosecution and the basis for many of the trial court's findings was the testimony of Dr. Wunderman, a clinical psychologist. During the termination proceeding, Dr. Wunderman opined that the mother was "addicted" to the termination proceeding, and that she had completed the required parenting course, visited her children at the scheduled times, and appeared in court "[a]s a means of escaping a feeling of tremendous emptiness, tremendous loneliness, tremendous nothingness that the borderline personality disorder does feel."
[3] Dr. Miller was the only psychiatrist to testify in this proceeding. Contrary to the court's characterization, his testimony did not provide clear and convincing evidence of neglect.
[4] My concerns may have been alleviated for the future by the 1994 legislature's amendments to sections 61.401 and 61.403, Florida Statutes (1993), that the guardian ad litem may "not [serve] as [an] attorney or advocate." 1994 Fla. Sess. Law Serv. ch. 94-204, §§ 3, 5 (West).