ORFINGER, J.
The paternal grandmother (“Grandmother”) and legal father (“Father”) appeal the trial court’s final judgment dismissing Grandmother’s petition to adopt K.A.G. (“Child”), a four-year-old boy. We affirm in part and reverse in part.
Father, who is charged with killing Child’s mother, is incarcerated awaiting trial. As a result, the Department of Children and Families (“DCF”) instituted dependency proceedings and filed a shelter petition. Child was placed in the temporary custody of his maternal aunt (“Aunt”) and her live-in fiancé. DCF also petitioned to involuntarily terminate Father’s parental rights.
With Father’s written consent, Grandmother petitioned to adopt Child and to terminate Father’s parental rights.[1] Grandmother complied with the statutory requirements under section 63.087, Florida Statutes (2013), for an adoption by a relative pending termination of parental rights. In response, Aunt filed a counter-petition for adoption in Grandmother’s adoption proceeding. The trial court — the same judge who presided over the dependency proceedings — held an evidentiary hearing on Grandmother’s adoption petition. Grandmother then moved to strike Aunt’s counter-petition for adoption, arguing that Aunt was not a party to the adoption proceeding and did not properly file her own petition to terminate parental rights and for relative adoption. Aunt argued that because Father had executed a valid consent for adoption, she had the right to seek to adopt Child. Grandmother and Father responded, contending that Father’s consent to termination of his parental rights and adoption was executed in favor of Grandmother only and was not an unconditional surrender of his parental rights.
The trial court ruled that Father’s consent was executed solely for the purpose of allowing Grandmother to adopt Child and, consequently, Aunt did not have the necessary consent to proceed with her petition for adoption. Accordingly, the court granted Grandmother’s motion to strike Aunt’s counter-petition for adoption. Aunt then moved to intervene in the adoption proceeding. She argued that she should be able to present evidence as to the factors articulated in section 63.082, Florida Statutes (2013), including Child’s bonding with her and the permanency she offered Child. Grandmother argued, however, that the court had previously determined that section 63.082, Florida Statutes, would only apply if Child was in DCF custody and because Child was not, section 63.082 did not apply.[2] The only question before *1273 the trial court, Father argued, was whether Grandmother was a proper party to adopt. The trial court agreed and denied the motion to intervene. The trial court then excluded counsel for DCF and the guardian ad litem from the courtroom because adoption proceedings are closed to all but the parties.[3] See § 63.162, Fla. Stat. (2013).
The trial court then heard testimony from Grandmother and Aunt. After the testimony was concluded, Grandmother’s counsel argued that adoption offered Child permanency and should not be deferred because of concerns about Child’s ability to maintain a relationship with Aunt. Father asserted that because his parental rights were still intact, he had a constitutional right to make a permanency determination for Child. To that end, Grandmother asserted that the trial court was not permitted to veto a parent’s decision simply because it perceived that another placement might be “better.” Thus, counsel argued that although the State has a compelling interest in ensuring Child is protected, once Father makes a placement determination that is both safe and appropriate, the State must exercise its interest in the least restrictive means. If the trial court determined that Grandmother was fit and appropriate, then, her counsel argued, it should grant her petition and then proceed to determine a transition plan that would serve Child’s best interests.
Following the evidentiary hearing, the trial court entered a final judgment dismissing Grandmother’s petition. The court made several factual findings. Most pertinent, it found that Father had consented in writing to the adoption in accordance with Florida law and, more specifically, that Father consented to commit Child to the care of an intermediary “for subsequent placement with [Grandmother].” The court expressed concern that it could not consider the same evidence and factors in the adoption proceeding as it would have considered in the dependency proceeding. Further, the court observed that it had to determine whether Grandmother was fit and proper “in a vacuum,” without the ability to determine whether adoption by her was in Child’s best interests. The court determined that it was not authorized to appoint a guardian ad litem in the adoption proceedings, nor did it receive any testimony from counselors regarding the impact the adoption might have on Child’s mental and emotional state.
The court found “no reasonable explanation as to why the adoption proceeding should be conducted without requiring inclusion of such pertinent information and such key participants.” Thus, it relied on considerations such as the Child’s needs and Child’s bonding with his caregiver that “would [have been] required under section 63.082(6)(e) if the child was in the custody of the department and adoption entity legally permitted to intervene [in the dependency proceeding].” As a result, the trial court dismissed Grandmother’s petition. .
Grandmother and Father both timely moved for rehearing. In her rehearing motion, Grandmother again argued that, because Father had selected her to adopt Child, the court’s best interests analysis should not have been a comparison between the Grandmother and other potential placements. The court’s best interests analysis, she asserted, should have been exclusively confined to whether she was appropriate, fit, and able to protect Child’s well-being.
*1274 In Father’s rehearing motion, he argued that his consent to adoption was valid, absent findings that it was obtained by fraud or duress, which was not alleged. Father stated that the court misapplied the burden of proof. Pursuant to section 63.089, Florida Statutes (2013), the court should have applied the clear and convincing evidence standard only to determine whether Father had executed a valid consent and whether that consent was obtained according to the requirements of chapter 63. Then, he argued, the court should have determined, by a preponderance of the evidence, if adoption by Grandmother was in Child’s best interests, without utilizing section 63.082(6).
Father further argued that parents have a fundamental right to make decisions about how to rear their children and courts may not interfere with that decision-making absent significant, actual, or threatened harm to their children. Father asserted that because DCF was seeking termination of Father’s parental rights in order to allow Aunt (DCF’s choice) to adopt Child, all those interested in Child’s welfare agreed that adoption was in Child’s best interests. After the trial court denied the motions for rehearing, Grandmother and Father timely appealed.
A child’s best interests must be at the forefront when the court considers an adoption. See § 63.022(2), Fla. Stat. (2013). Our standard of review in a termination of parental rights case is highly deferential. N.L. v. Dep’t of Children & Family Servs., 843 So.2d 996, 999 (Fla. 1st DCA 2003). A trial court’s finding of clear and convincing evidence will not be overturned unless it may be said that, as a matter of law, no one could reasonably find such evidence to be clear and convincing. Kingsley v. Kingsley, 623 So.2d 780, 786-87 (Fla. 5th DCA 1993); L.F. v. Dep’t of Children & Families, 888 So.2d 147, 148 (Fla. 5th DCA 2004) (finding that “[w]here a trial court has found that there is clear and convincing evidence supporting a termination of parental rights, such findings enjoy a presumption of correctness and will not be overturned unless clearly erroneous and lacking evidentiary support”). We review a judgment of adoption for substantial, competent evidence. Noonan v. Snipes, 569 So.2d 1381, 1381 (Fla. 2d DCA 1990). •
Here, the trial court dismissed Grandmother’s petition because it “[did] not find by clear and convincing evidence that the father’s parental rights should be terminated pending adoption by the paternal grandmother.” Grandmother and Father contend that the trial court applied an erroneous “best interests” standard utilizing section 63.082(6), thereby disregarding Father’s constitutional right to select an adoptive parent for Child. They argue that the trial court should have considered only Grandmother’s fitness and whether her home was suitable when making a best interests determination.
Grandmother’s petition to terminate Father’s parental rights and adopt Child was filed under section 63.087(3), which provides that “[ajdoptions of relatives ... are not required to file a separate termination of parental rights proceeding pending adoption. In such cases, the petitioner may .file a joint petition for termination of parental rights and adoption....” § 63.087(3), Fla. Stat. (2013); see also § 63.102(6), Fla. Stat. (2013) (“Petitions for the adoption of a stepchild, a relative, or an adult shall not require the filing of a separate judgment or separate proceeding terminating parental rights pending adoption. The final judgment of adoption shall have the effect of terminating parental rights simultaneously with the granting of the decree of adoption.”). Thus, in this case, the termination of parental rights *1275 and the adoption are dealt with in the same proceeding.
Section 63.089(3)(a) allows the trial court to terminate parental rights pending adoption if it determines, by clear and convincing evidence, supported by written findings, that the parent has executed a valid consent under section 63.082 and the consent was obtained according to the requirements of chapter 63. Before the trial court can consider the best interests of the child, it must first determine that the parent’s consent was given as required by section 63.082. Since the trial court failed to find that Father’s consent either was or was not valid, dismissing the petition was error.
Had the trial court determined Father’s consent was valid, it should have then determined, in the same proceeding, whether Child should be adopted by Grandmother. § 63.087(3), Fla. Stat. (2013). Section 63.142(4), Florida Statutes (2013), concerning the procedures for determining whether a child should be adopted following a termination of parental rights, provides, in pertinent part:
(4) Judgment. — At the conclusion of the hearing, after the court determines that the date for a parent to file an appeal of a valid judgment terminating that parent’s parental rights has passed and no appeal, pursuant to the Florida Rules of Appellate Procedure, is pending and that the adoption is in the best interest of the person to be adopted, a judgment of adoption shall be entered.
(Emphasis added). The trial court should have applied section 63.142(4) to consider Child’s best interests with respect to the adoption, without utilizing section 63.082(6), which was inapplicable to this proceeding. ■ As the Florida Supreme Court has directed:
[T]he petition for adoption should be determined on the basis of the fitness of a petitioner who is petitioning to adopt the child and whether the adoptive home that would be provided for the child by that petitioner is suitable for the child so that the child can grow up in a stable, permanent, and loving environment. It is within those criteria that the determination as to the best interests of the child is to be made with regard to an adoption petition.
G.S. v. T.B., 985 So.2d 978, 983 (Fla.2008).[4]
The trial court had before it two separate questions: (1) whether Father’s pa *1276 rental rights could be terminated based upon his consent; and (2) if so, was adoption by Grandmother in Child’s best interests. Different evidentiary burdens of proof apply to each determination. The former determination on “termination of parental rights” must be proven by clear and convincing evidence, while the latter, “best interests determination,” is to be proven by a preponderance of the evidence. Compare § 63.089(3), Fla. Stat. (2013) (requiring that “a judgment terminating parental rights pending adoption” be determined “by clear and convincing evidence”), with Hack v. Janes, 878 So.2d 440, 444 (Fla. 5th DCA 2004) (stating that absent legislation to the contrary, the “preponderance or greater weight of the evidence [standard] is the generally accepted burden of proof in civil matters”). Here, the trial court required Grandmother to prove by clear and convincing evidence that allowing her to adopt served the best interests of Child. This was error.
Finally, we briefly consider several issues that may reoccur when this matter is again reconsidered by the trial' court. The trial court concluded that it had no authority to appoint a guardian ad litem for Child in this adoption proceeding. We disagree. Section 63.022(4)(k) provides: “In all matters coming before the court under this chapter, the court shall enter such orders as it deems necessary and suitable to promote and protect the best interests of the person to be adopted.” We believe this statute authorizes the trial court, in its sound discretion, to appoint a guardian ad litem for a child in an adoption proceeding. In addition, courts have the inherent authority to protect children by appointing guardians ad litem when appropriate. See Simms v. State, Dep’t of Health & Rehabilitative Servs., 641 So.2d 957, 960-61 (Fla. 3d DCA 1994) (citing James v. James, 64 So.2d 534, 536 (Fla.1953)). Next, we agree with the trial court that Father’s consent to termination of his parental rights was not unconditional, but rather, was conditioned on the trial court granting Grandmother’s petition to adopt Child. If the trial court concludes that the adoption by Grandmother is not in Child’s best interests, Father’s consent to the termination of his parental rights is deemed ■withdrawn. Finally, we appreciate the trial court’s concern that it was not able to consider the same evidence in the adoption proceeding as it would be able to consider in the dependency and termination proceeding. To some extent, those concerns have been addressed by the recent adoption of Florida Family Law Rule of Procedure 12.003, which allows a court to consolidate as many issues as is practical in adoption and dependency/termination proceedings and to conduct joint hearings or trials of any issues in related family eases. See In re Amendments to the Fla. Rules of Judicial Admin., 132 So.3d 1114 (Fla.2014) (adopting rule 12.003, effective April 1, 2014). This rule, which was not in effect at the time this matter was considered initially, should alleviate many of the concerns expressed by the trial judge.
For these reasons, we affirm the judgment insofar as the court found Father’s consent to be conditional. In all other respects, we reverse and remand the matter for further proceedings.
AFFIRMED in part; REVERSED in part; REMANDED.
PALMER and EVANDER, JJ., concur.

. See § 63.087(3), Fla. Stat. (2013) (“Adoptions of relatives ... are not required to file a separate termination of parental rights proceeding pending adoption. In such cases, the petitioner may file a joint petition for termination of parental rights and adoption....”). The pendency of the dependency proceeding did not prohibit Grandmother from filing the separate adoption proceeding. See In re S.N.W., 912 So.2d 368, 373 (Fla. 2d DCA 2005).

. Grandmother is correct that section 63.082(6)(a) only applies when a child is in DCF custody. See § 63.082(6)(a), Fla. Stat. (2013); see also R.L. v. W.G., 147 So.3d 1054 (Fla. 5th DCA 2014). Though not apparent from the opinion, the child in that case was in DCF custody.

. Child has an appointed guardian ad litem in the dependency proceeding but not in the adoption proceeding. The guardian ad litem filed an amicus brief in this appeal.

. We agree with the Second District Court when, in In re S.N.W., 912 So.2d at 373 n. 4, it described the best interests analysis thusly:
We note that the “best interest” determination to be made under these circumstances is somewhat unique. If the birth parent has executed a valid and binding consent to an adoption, the court is not making a comparative assessment of the birth parents versus the prospective adoptive parents. Further, section 63.082(6)(d) specifically provides that the court "shall give consideration to the rights of the birth parent to determine an appropriate placement for the child” — an explicit recognition of the parents' constitutional right to the care, custody, and control of their children. See In re C.W.W. v. State, Dep’t of Children & Families, 788 So.2d 1020, 1023 (Fla. 2d DCA 2001) (citing Santosky v. Kramer, 455 U.S. 745, 754, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). Thus, the court is also prevented from comparing the birth parents’ choice of prospective adoptive parents with other potential placements that the court or the Department might choose for the child. Cf. § 39.801, Fla. Stat. (2004) (requiring that a court considering a petition for termination of parental rights must consider the manifest best interests of the child: "This consideration shall not include a comparison between the attributes of the parents and those of any persons providing a present or potential placement for the child”). Viewed in this light, the "best interest” analysis, requires a determination that the birth parent's choice of prospective adoptive parents is appropriate and pro *1276 tects the well-being of the child; not that it is the best choice as evaluated by the court or the Department in light of other alternatives.