GROSS, J.
Stephen L. Barnett appeals the dismissal of his verified petition for writ of mandamus, quo warranto, and/or all writs. The petition sought the abatement of a nolle prosse entered by the State Attorney for the Fifteenth Judicial Circuit, Peter Antonacci. We affirm because there is no legal basis to issue the writs.
In early 2012, Bruce Colton, the State Attorney for the Nineteenth Judicial Circuit, charged William Chris Blane, Jr., by information with three counts of fraudulent transactions[1] and one count of second degree grand theft between $20,000 and $100,000.[2] The information named Barnett as the victim of the crimes charged.
After filing the information, State Attorney Colton advised the Governor “that the victim [Barnett] and his wife are close friends of State Attorney Colton and his family[.]” Consequently, the Governor reassigned the criminal prosecution to the State Attorney for the Fifteenth Judicial Circuit.[3]
There was limited docket activity in the criminal case after it was transferred to the Fifteenth Circuit. Blane’s defense counsel moved to dismiss three of the four counts for failure to comply with the statute of limitations. Thereafter, the parties stipulated to a docket call which was set for May 24, 2012.
On May 11, 2012, an assistant state attorney, acting on behalf of State Attorney Antonacci, filed a nolle prosse with the clerk of the circuit court that dismissed all four counts against Blane. The nolle prosse stated, “Although there was probable cause for arrest and charge of the Defendant(s), the State has entered a Nolle Prosse in this case.”
In his lawsuit, Barnett alleged that he “did not receive any notice from anyone of the decision to file the nolle prosse, nor was he informed of the fact that such an action was being considered.” Four days after the entry of the nolle prosse, however, assistant state attorneys from Antonac-ci’s office met with Barnett in West Palm Beach and confirmed that the nolle prosse had been entered.
On June 7, 2012, Barnett filed a petition for writ of mandamus, quo warranto and/or all writs relief in the Florida Supreme Court. The petition sought an order “abating” the nolle prosse and, if necessary, an order compelling the Governor to appoint another state attorney to handle the prosecution. The Supreme Court transferred the case to the Nineteenth Judicial Circuit which entered the order dis *404 missing the petition that is the subject of this appeal.
“[T]he de novo standard of review is applied when considering an order granting a motion to dismiss,” including the review of an order dismissing a petition for writ of mandamus. Walker v. Ellis, 989 So.2d 1250, 1251 (Fla. 1st DCA 2008); see also Mazer v. Orange Cnty., 811 So.2d 857, 858-59 (Fla. 5th DCA 2002) (stating that appellate courts generally review orders dismissing petitions for writ of mandamus de novo).
Barnett argues that Antonacci violated his constitutional right under Article I, section 16(b) of the Florida Constitution to, as he states, “notice and an opportunity for a victim to be heard vis a vis the dismissal of an information by a State Attorney.” Article I, section 16(b) provides,
Victims of crime or their lawful representatives, including the next of kin of homicide victims, are entitled to the right to be informed, to be present, and to be heard when relevant, at all crucial stages of criminal proceedings, to the extent that these rights do not interfere with the constitutional rights of the accused.
(Emphasis added).
Based on this provision, Barnett contends that “the Florida Constitution prohibits disposition of [a] criminal case without notifying the victimf.]”
Harmonizing Article I, section 16(b) with the separation of powers provision of the Florida Constitution, we conclude that a prosecutor’s decision to file charges or to discontinue prosecution is not a “stage” of a criminal proceeding within the meaning of Section 16(b). See Fla. Const, art. II, § 3 (separation of powers provision).
be entitled to mandamus relief, ‘the petitioner must have a clear legal right to the requested relief, the respon-responmust have an indisputable legal duty to perform the requested action, and the petitioner must have no other adequate remedy available.’ ” Pleus v. Crist, 14 So.3d 941, 945 (Fla.2009) (quoting Huff-Huffv. State, 813 So.2d 10, 11 (Fla.2000)).
When reviewing constitutional provisions, a court “ ‘follows principles parallel to those of statutory interpretation.’ ” Lewis v. Leon Cnty., 73 So.3d 151, 153 (Fla.2011) (quoting Zingale v. Powell, 885 So.2d 277, 282 (Fla.2004)). First, Florida courts “must examine the actual language used in the constitution.” Id. (citing Crist v. Fla. Ass’n of Criminal Defense Lawyers, Inc., 978 So.2d 134, 140 (Fla.2008); Fla. Dep’t of Rev. v. City of Gainesville, 918 So.2d 250, 256 (Fla.2005)). “If the constitutional language is clear, unambiguous, and addresses the matter at issue, it must be enforced as written, and courts do not turn to rules of constitutional construction.” Ford v. Browning, 992 So.2d 132, 136 (Fla.2008) (citing Fla. Soc’y of Ophthalmology v. Fla. Optometric Ass’n, 489 So.2d 1118, 1119 (Fla.1986)).
“If the explicit language is ambiguous or does not address the exact issue before the court, the court must endeavor to construe the constitutional provision in a manner consistent with the intent of the framers and the voters.” Id. (citing Crist, 978 So.2d at 140). “It is a fundamental rule of construction that, if possible, amendments to the Constitution should be construed so as to harmonize with other constitutional provisions.... ” State v. Div. of Bond Fin. of Dep’t of Gen. Servs., 278 So.2d 614, 617 (Fla.1973).
A bedrock of the Florida Constitution is the separation of powers doc *405 trine, which provides that “[n]o person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided” in the Constitution. Art. II § 3, Fla. Const. “In construing our constitution, [Florida courts] have ‘traditionally applied a strict separation of powers doctrine.’ ” Fla. House of Reps. v. Crist, 999 So.2d 601, 611 (Fla.2008) (quoting Bush v. Schiavo, 885 So.2d 321, 329 (Fla.2004)). The separation of powers doctrine encompasses two fundamental prohibitions, the first being “that no branch may encroach upon the powers of another.” Chiles v. Children A, B, C, D, E, & F, 589 So.2d 260, 264 (Fla.1991). The doctrine “is directed only to those powers which belong exclusively to a single branch of government.... Thus, a branch of government is prohibited from exercising a power only when that power has been constitutionally assigned exclusively to another braneh[.]” State v. Palmer, 791 So.2d 1181, 1183 (Fla. 1st DCA 2001) (citing Simms v. State Dep’t of Health & Rehab. Servs., 641 So.2d 957, 960 (Fla. 3d DCA 1994); State v. Johnson, 345 So.2d 1069 (Fla.1977); Dep’t of Health & Rehab. Servs. v. Hollis, 439 So.2d 947 (Fla. 1st DCA 1983)) (citation omitted).
Due to the separation of powers doctrine, courts have long recognized that a prosecutor, as a member of the executive branch, has the sole responsibility to enforce criminal laws of the state. “[T]he discretion of a prosecutor in deciding whether and how to prosecute is absolute in our system of criminal justice.” State v. Cain, 381 So.2d 1361, 1367 (Fla.1980) (footnote omitted); see also United States v. Cox, 342 F.2d 167, 171 (5th Cir. 1965) (observing that “as an incident of the constitutional separation of powers, ... the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions”). As the Florida Supreme Court has explained,
[T]here is considerable authority for the proposition that prosecutorial discretion is itself an incident of the constitutional separation of powers, and that as a re-suit the courts are not to interfere with the free exercise of the discretionary powers of the prosecutor in his control over criminal prosecutions.
Cain, 381 So.2d at 1367 n. 8.
Under Article II, Section 3, a prosecutor has the exclusive discretion to decide whether to file charges or to continue with a prosecution. See State v. Brosky, 79 So.3d 134, 135 (Fla. 3d DCA 2012) (“Florida case law clearly provides that, in the absence of statute or motion to dismiss, the decision whether to prosecute or to dismiss charges is a determination to be made by solely the State.” (Citations omitted)). As an extension of this provision, a state attorney has the unilateral discretion to enter a nolle prosse. See State v. R.J., 763 So.2d 370, 371 (Fla. 4th DCA 1998) (“It is axiomatic that the decision to file a nolle prosse is vested solely in the discretion of the state.”) (footnote omitted); Wilkins v. State, 90 So.3d 305, 306 (Fla. 1st DCA 2012) (“[T]he decision to nolle prose a cause is within the sole discretion of the State ....”) (citing State v. Kahmke, 468 So.2d 284, 285 (Fla. 1st DCA 1985)). The discretionary power of a prosecutor “in determining whether a prosecution shall be commenced or maintained may well depend upon matters of policy wholly apart from any question of probable cause.” Cox, 342 F.2d at 171 (footnote omitted).
Harmonizing Article I, Section 16(b) with the separation of powers mandated by Article II, Section 3 leads to the conclusion that a prosecutor’s decision to file charges or to discontinue prosecution *406 with a nolle prosse is not a “stage” of a criminal proceeding contemplated by section 16(b). Rather, section 16(b) contemplates in-court hearings before a judge as the forum for exercising the rights provided in that section; along with the prosecution and defendant, a victim has a right to be “informed” of, to be “present ,” and to be “heard” at court hearings pertaining to a criminal case.
To interpret the section as urged by Barnett would lead to an absurd result; a victim would have the right to be “present” for the prosecutor’s in-office decision not to file charges or when a prosecutor discontinues prosecution by filing a nolle prosse with the clerk of the court. The right to be heard protected under section 16(b) is not the right to be heard by the prosecutor, but the right to be heard by a judge. A judge has no supervisory control over a prosecutor’s decision not to prosecute. A prosecutor unilaterally may file new charges or nolle prosse a case without the approval of a court.
This interpretation that section 16(b) pertains to in-court hearings is supported by section 960.001(l)(e), Florida Statutes (2012), which provides that a “victim ... shall receive ... prompt advance notification[ ] of judicial and post judicial proceedings relating to his or her case.” “Judicial proceedings” are hearings before a judge that culminate in a ruling by the court. Through mandamus or other writs, a court’s interference in a prosecutor’s decision of whether to prosecute would transgress the principle of separation of powers.
In sum, under Article I, Section 16(b) victims of crimes are entitled to the “right to be informed, to be present, and to be heard when relevant, at all crucial stages of criminal proceedings.” A prosecutor’s decision whether to file charges or to discontinue prosecution is not a “stage” of a criminal proceeding within the meaning of Section 16(b).
Barnett conceded at oral argument that a victim has no right under section 16(b) to confront a prosecutor before a charging decision is made. Here, the first prosecutor abandoned the case after filing charges due to his close relationship with the victim. This conduct placed the second prosecutor in the same situation as the first. In that context, the second prosecutor was entitled to make an independent evaluation of whether a prosecution should proceed, a decision akin to the initial filing decision that Barnett concedes is not subject to section 16(b) or section 960.001(e).
The circuit court properly dismissed the petition for writ of mandamus because Barnett failed to show that the State Attorney violated a “clear legal right.” In addition, “ ‘[mjandamus is an appropriate remedy to compel the performance of a ministerial act’ ” which is “where there is no room for the exercise of discretion, and the performance being required is directed by law.” Wright v. Frankel, 965 So.2d 365, 370 (Fla. 4th DCA 2007) (quoting Shulmister v. City of Pompano Beach, 798 So.2d 799, 802 (Fla. 4th DCA 2001)). Here, no such “ministerial act” is implicated.
Finally, the writ of quo war-ranto and the all writs provisions of the Florida Constitution are not applicable to this case. A writ of quo warranto “historically has been used to determine whether a state officer or agency has improperly exercised a power or right derived from the State.” Fla. House of Reps., 999 So.2d at 607. Since a state attorney unquestionably has the power to nolle prosse a criminal case under his jurisdiction, a writ of quo warranto has no application here.
Likewise, the all writs provision is equally unavailing. The Florida Constitu *407 tion provides that “[t]he supreme court ... [m]ay issue writs of prohibition to courts and all writs necessary to the complete exercise of its jurisdiction.” Art. V, § 3(b)(7), Fla. Const. “[T]he all writs provision does not constitute a separate source of original or appellate jurisdiction but rather operates in furtherance of the Court’s ‘ultimate jurisdiction,’ conferred elsewhere in the constitution.” Williams v. State, 913 So.2d 541, 543 (Fla.2005).

Affirmed.

MAY, J., and JOHNSON, LAURA, Associate Judge, concur.

. See §§ 517.301 (l)(a)2. & 517.302(1), Fla. Stat. (2012).

. See § 812.014(2)(b)l„ Fla. Stat. (2012).

. At the time the Governor issued the executive order, Michael McAuliffe served as the State Attorney for the Fifteenth Judicial Circuit. Shortly thereafter, McAuliffe resigned and the Governor appointed Peter Antonacci to serve as the State Attorney for the remainder of the term.