DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**BOARD OF COUNTY COMMISSIONERS BROWARD COUNTY FLORIDA,** a political subdivision of the State of Florida,

Appellant,

v.

**LORI PARRISH,** Broward County Property Appraiser,

Appellee.

No. 4D14-101

[December 10, 2014]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Dale Ross, Judge; L.T. Case No. 13-023090 (08).

Joni Armstrong Coffey, Broward County Attorney, Andrew J. Meyers, Chief Appellate Counsel, and Rocio Blanco Garcia, Assistant County Attorney, Fort Lauderdale, for appellant.

William R. Scherer of Conrad & Scherer, LLP, Fort Lauderdale, and Bruce S. Rogow and Tara A. Campion of Bruce S. Rogow, P.A., Fort Lauderdale, for appellee.

GROSS, J.

This case is a tug of war between Broward County's property appraiser, a constitutional officer, and the Board of County Commissioners. The Board wants to have as much control over its budget as possible; the property appraiser believes that the Board's discretion over *her* budget is limited by the budget review process set by state law. The Florida Constitution says that the Board's "powers of local self-government" may not be "inconsistent with general law."[1] Art. VIII, § 1(g), Fla. Const. Our

---

[1]As the Supreme Court has explained,

> [a] general law operates universally throughout the state, or uniformly upon subjects as they may exist throughout the state, or uniformly within permissible classifications by population of

reading of applicable state statutes compels the conclusion that the property appraiser's view of her budgetary process is correct, so we affirm the order granting a writ of mandamus.[2]

### *Factual Background*

By way of background, section 195.087, Florida Statutes (2013), requires the Florida Department of Revenue ("the FDOR") to determine the budget for each county's property appraiser. Under this statute, on or before June 1 of each year, property appraisers must submit to the FDOR "a budget for the operation of the property appraiser's office for the ensuing fiscal year beginning October 1," and furnish a copy of such budget to the subject county's commissioners. § 195.087(1)(a), Fla. Stat. (2013). Following submission, the FDOR has until July 15 to notify the property appraiser and the board of county commissioners of its tentative budget amendments and changes. *Id.* Thereafter, "the property appraiser and the board of county commissioners may submit additional information or testimony to the [FDOR] respecting the budget" until—at the latest— August 15, at which point the FDOR "shall make its final budget amendments or changes to the budget and shall provide notice thereof to the property appraiser and board of county commissioners." *Id.*

Should the property appraiser or board of county commissioners take exception with the FDOR's final budget determination, either is entitled to appeal the matter to the Administration Commission—comprised of the Governor and Cabinet—no later than fifteen days after the county concludes its section 200.065(2)(d),[3] Florida Statutes (2013), public

---

counties or otherwise, or is a law relating to a state function or instrumentality.

*Fla. Dep't. of Business & Prof'l Regulation v. Gulfstream Park Racing Ass'n*, 967 So. 2d 802, 807 (Fla. 2007) (quoting *State ex rel. Landis v. Harris,* 163 So. 237, 240 (Fla. 1934)).

[2]At oral argument, the County suggested that the question presented in this case was moot. Without deciding the issue of mootness, we consider the case on its merits because it presents a controversy "capable of repetition, yet evading review." *N.W. v. State*, 767 So .2d 446, 447 n.2 (Fla. 2000); *see also B.G. v. State,* 137 So. 3d 548, 548 (Fla. 4th DCA 2014).

[3]Section 200.065(2)(d), Florida Statutes (2013), states in full:

Within 15 days after the meeting adopting the tentative budget, the taxing authority shall advertise in a newspaper of general circulation in the county as provided in subsection (3), its intent to finally adopt a millage rate and budget. A public hearing to finalize

hearing to finalize the county's budget and set its millage rate. § 195.087(1)(b), Fla. Stat. (2013).

Unlike a plenary appeal to this court,[4] an appeal to the Administration Commission is not a matter of right, as the statute dictates merely that the Commission "may hear appeals" from the FDOR's final action. *Id.* If the Administration Commission considers the matter and finds "any aspect of the budget [to be] unreasonable in light of the workload of the office of the property appraiser in the county under review," it may amend the judgment as necessary. *Id.* Upon completion of this process, the resulting budget request "as approved by the department and as amended by the commission . . . become[s] the operating budget of the property appraiser for the ensuing fiscal year beginning October 1, except that the

---

the budget and adopt a millage rate shall be held not less than 2 days nor more than 5 days after the day that the advertisement is first published. During the hearing, the governing body of the taxing authority shall amend the adopted tentative budget as it sees fit, adopt a final budget, and adopt a resolution or ordinance stating the millage rate to be levied. The resolution or ordinance shall state the percent, if any, by which the millage rate to be levied exceeds the rolled-back rate computed pursuant to subsection (1), which shall be characterized as the percentage increase in property taxes adopted by the governing body. The adoption of the budget and the millage-levy resolution or ordinance shall be by separate votes. For each taxing authority levying millage, the name of the taxing authority, the rolled-back rate, the percentage increase, and the millage rate to be levied shall be publicly announced prior to the adoption of the millage-levy resolution or ordinance. In no event may the millage rate adopted pursuant to this paragraph exceed the millage rate tentatively adopted pursuant to paragraph (c). If the rate tentatively adopted pursuant to paragraph (c) exceeds the proposed rate provided to the property appraiser pursuant to paragraph (b), or as subsequently adjusted pursuant to subsection (11), each taxpayer within the jurisdiction of the taxing authority shall be sent notice by first-class mail of his or her taxes under the tentatively adopted millage rate and his or her taxes under the previously proposed rate. The notice must be prepared by the property appraiser, at the expense of the taxing authority, and must generally conform to the requirements of s. 200.069. If such additional notice is necessary, its mailing must precede the hearing held pursuant to this paragraph by not less than 10 days and not more than 15 days.

[4]*See* art. V, § 4(b)(1), Fla. Const.

budget so approved may subsequently be amended under the same procedure." *Id.*

In this case, the Board informed its constitutional officers—including its property appraiser, Lori Parrish—that the county was expecting a 1.8% appropriation increase, leaving the property appraiser with a target budget of $14,600,200. On June 5, 2013, the Board revised its appropriation figure to 3.8%, increasing the property appraiser's projected budget to $14,886,000.

Notwithstanding the Board's position on her budget, on May 31, 2013, the property appraiser submitted to the FDOR her office's proposed 2014 fiscal year budget, requesting $18,819,000. Consistent with section 195.087(1), the FDOR reviewed the budget request, made certain amendments and changes, and on July 11, 2013, notified both the property appraiser and the Board that it reached a tentative budget for the office of $18,712,207. Displeased with the determination, the Board responded by submitting additional information to the FDOR, including the aforementioned projected budget and its explanation for the calculation. Nevertheless, when the statutory deadline of August 15 arrived, the FDOR informed both sides no further changes would be forthcoming, leaving the county responsible for $16,563,527 of the bill.

Unwilling to bind itself by the FDOR's decision, the Board convened during a September 24, 2013 public hearing to discuss adopting a 2014 fiscal budget that appropriated less funds to the property appraiser than the amount approved by the FDOR. During the hearing, Commissioner Martin David Kiar moved to approve the property appraiser's budget as set by the FDOR, arguing that under section 195.087(1)'s statutory scheme, a property appraiser "is entitled and should receive the Department of Revenue approved budget." In a sentiment joined by several commissioners and the mayor, Commissioner Kiar explained:

> [W]e owe the Property Appraiser the money that the Department of Revenue approved. We technically owe that money to her. That's money that we're supposed to appropriate to.
>
> If we're upset with that, we can appeal to the Cabinet but we have to appropriate that money. That is technically her money. It's been approved by the Department of Revenue. It's been set up by that.

Despite these concerns, the Board's majority approved a final 2014 fiscal year budget appropriating only $15,855,000 for the property appraiser, a significant drop from the FDOR's approved amount. In

conjunction with this decision, the Board chose to appeal the FDOR's final budgetary decision to the Administration Commission. Since supplemental authority was never submitted, and the 2014 fiscal year has come to a close, it appears no decision from the Administration Commission's will issue.

### *Procedural Posture*

Believing the Board's action to be unauthorized, the property appraiser filed a request with Broward County for a quarterly draw of $4,140,881.75, conforming to the FDOR's budgetary determination. After the county countered with an offer of $3,963,750.00, the property appraiser filed a petition for writ of mandamus in the circuit court against the Board, requesting that the Board be compelled "to fully fund the [FDOR] approved Fiscal Year-2014 operation budget, as required per Florida Statutes, §§ 192.091 and 195.087." Aside from the irreparable harm caused by her inability to carry out her statutory duty, the property appraiser argued that "[b]ecause the county commission's duty to adhere to the [FDOR's] **final** budget is wholly ministerial, its refusal to fully fund the [p]roperty [a]ppraiser [wa]s the . . . type of agency inaction that mandamus is designed to redress."

After the trial court entered an alternative writ of mandamus,[5] the Board responded by characterizing the petition as an "improper attempt to circumvent the exclusive appellate procedures established by the Florida Legislature" in section 195.087(1)(b), involving an appeal to the Administration Commission. In addition, the Board asserted the petition failed to satisfy the elements justifying a writ of mandamus.

Following a non-evidentiary hearing, in December 2013, the trial court entered a final order granting the property appraiser's mandamus petition, compelling the Board to "immediately fund [the property appraiser's] budget in accordance" with the FDOR's final budget determination. In so ruling, the trial court noted that while section 195.087(1)(b) provides either the property appraiser or board of county commissioners the ability to appeal the FDOR's final budget determination to the Administration

---

[5]"If a petition for writ of mandamus shows a prima facie case for relief, the [trial] court shall issue an alternative writ in mandamus to which the defendant in the mandamus proceeding shall respond as provided in Florida Rule of Civil Procedure 1.140." *Brown v. State*, 93 So. 3d 1194, 1196 (Fla. 4th DCA 2012) (citing *Parish v. State,* 59 So. 3d 1229, 1230 (Fla. 4th DCA 2011); Fla. R. Civ. P. 1.630(d)(3)).

Commission, the budget approved by the FDOR is "final" such that the property appraiser maintained "an immediate right to be funded so as to discharge [her] constitutional duties." The trial court cautioned, however, that its order was "not intended to usurp the budgetary authority of [the Board, the FDOR,] or the Administration Commission"; rather, its purpose was to direct the Board to "comply and discharge their ministerial act of funding the budget for [the property appraiser] as approved or subsequently amended by the" FDOR.

*The Circuit Court Did Not Abuse its Discretion in Granting a Writ of Mandamus Requiring the Board to Fund the Property Appraiser in Accord with the FDOR's Approved Budget, Even Though the Board Sought Review with the Governor and Cabinet*

The question before us concerns whether the FDOR's final determination of the property appraiser's budget entitled her to recover from the Board a quarterly draw in that amount at the start of the fiscal year, notwithstanding the pendency of an appeal with the Administration Commission. Close analysis of the applicable statutory framework supports the property appraiser's position.

While the granting of a writ of mandamus petition is typically reviewed for an abuse of discretion, *see Ilkhani v. Lamberti*, 50 So. 3d 1180, 1181 (Fla. 4th DCA 2010), "to the extent our decision turns on statutory interpretation, we apply a *de novo* standard of review." *Harvard ex rel. J.H. v. Village of Palm Springs*, 98 So. 3d 645, 647 (Fla. 4th DCA 2012) (citing *Anthony v. Gary J. Rotella & Assocs., P.A.*, 906 So. 2d 1205 (Fla. 4th DCA 2005)).

As its primary issue on appeal, the Board asserts the property appraiser lacks a clear legal right sufficient to warrant mandamus relief since neither section 195.087's "statutory scheme nor case law expressly addresses a duty to provide interim funding" in the amount approved by the FDOR, where an appeal is pending with the Administration Commission. The property appraiser counters that, in accordance with section 192.091, Florida Statutes (2013), "unless and until the Governor and Cabinet, sitting as the Administration Commission, amend the [FDOR's budgetary determination,] the budget stands as approved and must be proportionally funded by the" Board.

"Mandamus is a common law remedy used to enforce an established legal right by compelling a person in an official capacity to perform an indisputable ministerial duty required by law." *Poole v. City of Port Orange*, 33 So. 3d 739, 741 (Fla. 5th DCA 2010) (citing *Puckett v. Gentry*, 577 So. 2d 965, 967 (Fla. 5th DCA 1991)). "'To be entitled to mandamus relief, the petitioner must have a clear legal right to the requested relief, the

respondent must have an indisputable legal duty to perform the requested action, and the petitioner must have no other adequate remedy available.'" *Barnett v. Antonacci*, 122 So. 3d 400, 404 (Fla. 4th DCA 2013) (quoting *Pleus v. Crist*, 14 So. 3d 941, 945 (Fla. 2009)). Mandamus, therefore, cannot be used "'to compel a public agency to exercise its discretionary powers in a given manner,'" *Dep't of Children & Family Servs. v. Burton*, 802 So. 2d 467, 469 (Fla. 2d DCA 2001) (quoting *Williams v. James*, 684 So. 2d 868, 869 (Fla. 2d DCA 1996)), or in "cases of doubtful right." *State ex rel. Haft v. Adams*, 238 So. 2d 843, 844 (Fla. 1970) (quoting *State ex rel. Perkins v. Lee*, 194 So. 315, 317 (Fla. 1940)).

Central to mandamus relief is the ministerial character of the compelled action—a situation arising where there "is no room for the exercise of [the respondent's] discretion, and the performance being required is directed by law.'" *Wright v. Frankel*, 965 So. 2d 365, 370 (Fla. 4th DCA 2007) (quoting *Shulmister v. City of Pompano Beach*, 798 So. 2d 799, 802 (Fla. 4th DCA 2001)). In the agency context, "official action is considered ministerial when it is arrived at as the result of the performance of a specific duty arising from legislatively designated facts." *Solomon v. Sanitarians' Registration Bd.*, 155 So. 2d 353, 356 (Fla. 1963). "It is the nature of the particular thing to be done that determines whether its character is ministerial for mandamus purposes." *W. Flagler Assocs., Ltd. v. Bd. of Bus. Regulation*, 241 So. 2d 369, 378 (Fla. 1970).

To place this issue in its proper context, it is essential to grasp the FDOR's role in establishing a county property appraiser's budget, as established by the Legislature. Thus, we begin our analysis by discussing *why* the Legislature, through section 195.087(1)[6], interjected the FDOR—

---

[6]Section 195.087(1)(a), Florida Statutes (2013), provides in full as follows:

> On or before June 1 of each year, every property appraiser, regardless of the form of county government, shall submit to the Department of Revenue a budget for the operation of the property appraiser's office for the ensuing fiscal year beginning October 1. The property appraiser shall submit his or her budget in the manner and form required by the department. A copy of such budget shall be furnished at the same time to the board of county commissioners. The department shall, upon proper notice to the county commission and property appraiser, review the budget request and may amend or change the budget request as it deems necessary, in order that the budget be neither inadequate nor excessive. On or before July 15, the department shall notify the property appraiser and the board of county commissioners of its tentative budget amendments and changes. Prior to August 15, the

a *state* agency—into a dispute between a *county* property appraiser and a board of *county* commissioners.

In enacting Chapter 195, the Legislature's stated purpose was "to recognize and fulfull the state's responsibility to secure a just valuation for ad valorem tax purposes of all property and to provide for a *uniform assessment* as between property within each county and property in every other county or taxing district." § 195.0012, Fla. Stat. (2013) (emphasis added). In effectuating this goal, the Legislature charged the FDOR "with implementing [this] intention" by, among other things,[7] "supervising Florida property appraisers and other local taxation officials and ensuring that they comply with the laws which govern the assessment, collection and administration of ad valorem taxes." *Dep't of Revenue v. Ford*, 438 So. 2d 798, 800 (Fla. 1983) (citation omitted). As our supreme court cautioned in *Burns v. Butscher*, 187 So. 2d 594, 596 (Fla. 1966), absent this stable statewide presence, the "[e]xercise of unbridled discretion by 67 Tax Assessors without their being anchored to any master plan would result in . . . imbalance."

The FDOR's role in setting the budget for each county's property appraiser serves the goal of a "uniform assessment as between property within each county." § 195.0012, Fla. Stat. (2013). Prior to 1973, section 195.011, Florida Statutes, broadly tasked the FDOR[8] with reviewing budgets submitted by assessors and tax collectors to determine whether the requested amount was sufficient "to carry on [the assessor or tax collector's] work"; if the budget was inadequate or excessive, the FDOR was required to return the budget to the assessor or tax collector, together with its ruling, to allow the entity to make the required budgetary revisions prior to resubmission.[9] § 195.011, Fla. Stat. (1971).

---

property appraiser and the board of county commissioners may submit additional information or testimony to the department respecting the budget. On or before August 15, the department shall make its final budget amendments or changes to the budget and shall provide notice thereof to the property appraiser and board of county commissioners.

[7] *See In re Polygraphex Sys., Inc.*, 275 B.R. 408, 415-16 (Bankr. M.D. Fla. 2002) (detailing the FDOR's relationship with property appraisers).

[8] In the statute's initial 1941 iteration, this responsibility fell upon the state's elected comptroller. *See* Ch. 41-20722, Laws of Fla.

[9] Section 195.087(2), Florida Statutes (2013), still applies substantially the same budget review system for tax collectors.

In 1973, the Legislature "substantially reworded" this budget review scheme by enacting section 195.087, which provided the FDOR with appreciably more guidance and safeguards, particularly as applied to property appraisers.  *See* Ch. 73-172, Laws of Fla.  The Attorney General in 1973 explained that this change derived in part from the Legislature's desire to preserve uniformity within the property appraisal process:

> The integrality of, and the procedural safeguards incorporated in, the foregoing budget review system give rise to the inference that the legislature . . . intended to establish a comprehensive uniform expression of state policy regarding the review of county assessors' budgets to secure their functional sufficiency to achieve uniform state-wide assessment practice.

Op. Att'y Gen. Fla. 73-389 (1973); *see also In re Polygraphex Sys., Inc.*, 275 B.R. 408, 414 (Bankr. M.D. Fla. 2002) (stating that the "main thrust" of Chapter 195 "is to ensure uniformity in the collection and assessment of property taxes").

Viewing section 195.087 through this lens, with the insertion of the FDOR as the arbitrator between property appraisers and county commissioners in the budgetary process, the Legislature sought to shield property appraisers from local political pressure to avoid compromising the goal of statewide valuation uniformity.

In the budgetary process, the property appraiser is the yin to the board of county commissioners' yang.  Each year the board of county commissioners is required to prepare, summarize, and approve a *balanced* county budget, meaning "the total of the estimated receipts available from taxation and other sources" must "equal[ ] the total of appropriations for expenditures and reserves."  § 129.01(2)(a)-(b), Fla. Stat. (2013).  Ad valorem taxes—which comprise the majority of the county's recoverable taxes—derive from combining the property appraiser's valuation of the county's property with the county commissioners' approved millage rate— the rate at which the county's real property is taxed.  *See* §§ 129.03(1), 200.001, 200.065, Fla. Stat. (2013).  Given this relationship, the property appraiser's valuation heavily impacts a county's ability to expand its budget—if a county's aggregate real property decreases in value, its operating budget also decreases absent a millage rate increase.

Since raising taxes is politically unpopular, county commissioners have a powerful incentive to pressure their property appraiser to arrive at higher property valuations.  If a county's real property valuation increases, it is

market forces and the property appraiser, not the county commissioners, who shoulder the tax hike blame. For this reason, the property appraiser's budget is established by an unelected, independent entity—the FDOR—instead of county commissioners. Free from political pressures, the FDOR may hone in on the adequacy of the property appraiser's proposed budget, without the distraction of the next election.

These considerations underscore why condoning the Board's course of action in this case would not only be contrary to the Legislature's intent but problematic in practice. Under section 195.087's budget review system, the board of county commissioners assumes the role of advocate rather than decision-maker. As articulated by the Attorney General in 1997 when discussing section 197.087(2), which applies to an analogous review for tax collectors, while section 195.087 "requires that a copy of the budget be furnished to the board of county commissioners, *it does not provide for, or otherwise require, approval by the county commission.*" Op. Att'y Gen. Fla. 97-02 (1997) (emphasis added). Rather, "it is the [FDOR] that is charged under the statute with determining whether the budget is adequate." *Id.*

Consistent with the Attorney General's viewpoint, section 192.091(1)(a), Florida Statutes (2013), provides that "[t]he budget of the property appraiser's office, **as approved by the Department of Revenue, shall be the basis** upon which the several tax authorities of each county, except municipalities and the district school board, **shall be billed by the property appraiser for services rendered.**" (Emphasis added). The statute further directs that payments to the property appraiser "**shall be made quarterly** by each such taxing authority." § 192.091(1)(b), Fla. Stat. (2013). (Emphasis added). These provisions, when read *in pari materia* with section 195.087, express the legislative desire that the FDOR's final budgetary decision serve as the property appraiser's definitive budget for billing purposes. By placing the cards in the FDOR's hands, the Legislature precluded a board of county commissioners from strong-arming a property appraiser during budgetary disputes by withholding funds pending a discretionary appeal. Rather, as section 192.091(1)(a) dictates, the FDOR's budgetary determination must be honored until a budget amendment or a decision by the Administration Commission replaces it.

This notion is strengthened by the discretionary nature of the Administration Commission's appellate review. Pursuant to section 195.087(1)(b),[10] the Administration Commission is neither compelled to

_____

[10]Section 195.087(1)(b) provides in full:

hear budgetary appeals from the property appraiser or the board of county commissioners, nor required to provide a timetable for making its decision. Rather, the statute provides that the Administration Commission "may hear appeals," suggesting that the decision to hear an appeal is a purely discretionary one, leaving open the possibility—as occurred in this case—that the commission may never rule upon the appeal at all.

Given this indeterminate structure, had the Legislature intended the FDOR's final budgetary determination to receive an automatic stay pending appeal to the Administration Commission, it would have provided such remedy, as it has done in similar situations, or at the very least set a timeline for the Administration Commission's action. *See, e.g.,* § 380.07(4), Fla. Stat. (2013) (stating, within the context of appeals to the Florida Land and Water Adjudicatory Commission, that "[t]he filing of [a] petition stays the effectiveness of the order until after the completion of the appeal process"). By failing to do so, and crafting an appellate process predicated on discretion, it is clear—and logical given the disruption such a stay would bring—that the absence of a stay within the statute was a significant omission, nullifying the Board's argument that it may impose a de facto stay by withholding funds from the property appraiser.

---

The Governor and Cabinet, sitting as the Administration Commission, may hear appeals from the final action of the department upon a written request being filed by the property appraiser or the presiding officer of the county commission no later than 15 days after the conclusion of the hearing held pursuant to s. 200.065(2)(d). The Administration Commission may amend the budget if it finds that any aspect of the budget is unreasonable in light of the workload of the office of the property appraiser in the county under review. The budget request as approved by the department and as amended by the commission shall become the operating budget of the property appraiser for the ensuing fiscal year beginning October 1, except that the budget so approved may subsequently be amended under the same procedure. After final approval, the property appraiser shall make no transfer of funds between accounts without the written approval of the department. However, all moneys received by property appraisers in complying with chapter 119 shall be accounted for in the same manner as provided for in s. 218.36, for moneys received as county fees and commissions, and any such moneys may be used and expended in the same manner and to the same extent as funds budgeted for the office and no budget amendment shall be required.

To combat this conclusion, the Board contends section 195.087(1)(b)'s linking of the deadline to file an appeal with the Administration Commission to fifteen days after the conclusion of a section 200.065(2)(d) hearing evidences the Legislature's intent that county commissioners be permitted to set an interim budget pending appeal. The section 200.065(2)(d) hearing is the culmination of the budget creation process, during which the county commissioners conduct a public hearing before finalizing the county's budget and millage rate for the fiscal year. While it is true that section 200.065(2)(d) allows the board of county commissioners to "amend [its] adopted tentative budget *as it sees fit*" and "adopt a final budget" at this hearing, such a broad, general conferment of power does not contravene section 192.091's specific mandate requiring the board to honor the FDOR's decision—otherwise, the FDOR's decision would be superfluous.

Furthermore, the Legislature's tying of the appellate deadline to the conclusion of the section 200.065(2)(d) hearing does little to support the Board's position. It makes sense that appeals be filed after the county's budget is finalized so the Administration Commission can fully appreciate, within the context of the county's total budget, the impact of a potentially excessive or inadequate property appraiser budget.

We have considered the other arguments raised by the Board and find them to be unpreserved or without merit.

*Affirmed.*

DAMOORGIAN, C.J., and MAY, J., concur.

\*        \*        \*

**Not final until disposition of timely filed motion for rehearing.**

- 12 -