NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

VILLA BELLINI RISTORANTE & LOUNGE, )
INC., )
                                 )
          Appellant, )
                                 )
v. )          Case No. 2D18-2249
                                 )
CIRO MANCINI, and QAMM )
PROPERTIES, INC., a Florida corporation, )
                                 )
          Appellees. )
_____ )

Opinion filed November 15, 2019.

Appeal from the Circuit Court for Pinellas
County; George M. Jirotka, Judge.

Stacy D. Blank of Holland & Knight LLP,
Tampa, for Appellant.

Brandon S. Vesely and Shannon T. Sinai
(withdrew after briefing) of Albertelli Law,
Tampa; Brandon S. Vesely of The Florida
Appellate Firm, P.A., St. Petersburg
(substituted as counsel of record), for
Appellee Ciro Mancini.

No appearance for Appellee QAMM
Properties, Inc.


LUCAS, Judge.

On the surface, this is a business dispute over the right of a shareholder to inspect his corporation's records; but the real controversy here is whether Ciro Mancini, an executive chef, is in fact a shareholder of Villa Bellini Ristorante & Lounge, Inc. (Villa Bellini). Following an evidentiary hearing, the circuit court issued its "Final Order Granting Petitioner's Writ of Mandamus and Motion for Summary Relief" in favor of Mr. Mancini and determined that Mr. Mancini was indeed a Villa Bellini shareholder and that, as such, he was entitled to access and review of Villa Bellini's corporate records. Villa Bellini appeals from that order.

## I.

In the interest of brevity, we will relate several of the circuit court's factual findings to provide some of the factual background of this appeal:

> On or about January 27, 2014, Ciro Mancini ("Mancini"), an Italian chef working at a restaurant in Dunedin . . . spoke with a man by the name of Marco Marzocca ("Marzocca") about opening an Italian restaurant called Villa Bellini Ristorante, LLC. . . .
>
> . . . .
>
> On or about July 24, 2014, Villa Bellini [Ristorante] and Lounge, Inc. ("VBRL") was established and incorporated and Villa Bellini Ristorante, LLC ceased operations.
>
> Amongst other things, Mancini, as general manager and executive chef of VBRL, was responsible for overseeing the buildout, the hiring of employees, and the menu to the new restaurant, VBRL.
>
> In his position as Executive Chef of VBRL, Mancini was paid a salary.
>
> On or about September 20, 2016, Mancini was terminated as the Executive Chef of VBRL. . . .

After September 20, 2016, Mancini, through counsel, made requests for inspection of books and records of VBRL pursuant to a statutory demand for inspection Chapter § 607.1602, Florida Statutes (2016 as amended) but said requests were denied because VBRL, Inc. did not recognize Mancini as a shareholder.

What followed Mr. Mancini's termination and unsuccessful demand to review Villa Bellini's records was Mr. Mancini's filing of a verified petition for writ of mandamus against Villa Bellini. Mr. Mancini also filed a "Motion for Summary Relief and Expedited Relief Pursuant to Fla. Stat. § 607.1604(1) and Expedited Relief Pursuant to Fla. Stat. § 607.1604(2)" in which Mr. Mancini, quite candidly, alleged that the underlying purpose for the requested documents was to "determine the existence and merits" of potential legal and equitable claims Mr. Mancini would pursue against Villa Bellini and its shareholders. However, as Mr. Mancini conceded (in a subsequent motion to consolidate and stay), the determination of Mr. Mancini's status as a shareholder of Villa Bellini—that is, whether he was one—was an important preliminary issue that "must be made in the first instance" by the circuit court.

Perhaps not surprisingly, that issue was both somewhat convoluted and hotly contested. We need not detail all the bank records, tax returns, amended tax returns, and corporate records that were brought to the circuit court's attention. Suffice it to say, there were discrepancies—early corporate filings reflected Mr. Mancini owning 60,000 of Villa Bellini's 240,000 authorized shares; amended records later deleted that ownership interest.[1]

---

[1]The record does not reflect that Villa Bellini issued physical certificates of shares to any of its shareholders.

On April 6 and 12, 2018, the circuit court convened an evidentiary hearing on Mr. Mancini's motion for summary relief and considered the merits of his mandamus petition. At the outset of the proceeding, the court announced that the hearing was "a show-cause hearing whether this Court should not immediately issue a writ of mandamus," which raised another preliminary issue: who had the burden of persuasion? Villa Bellini's counsel maintained that the burden remained on the petitioner, while Mr. Mancini argued that the burden would be on the respondent to show good cause why Mr. Mancini was not entitled to the corporate records he sought. The court agreed with Mr. Mancini and indicated that Villa Bellini bore the burden of showing "why this Court should not issue a writ of mandamus," and the parties then proceeded to present their respective cases.

From our review of the evidentiary hearing, the underlying issue of Mr. Mancini's status as a shareholder was anything but clear. The current president (and partial owner) of Villa Bellini, Vincent Addonisio, testified that Mr. Mancini never became a shareholder of Villa Bellini because Mr. Mancini never contributed the $60,000 that Mr. Addonisio believed was required under a purported "operating agreement" of the corporation.[2] Mr. Mancini could not recall the total amount he had paid for his shares in Villa Bellini, but he testified that he provided a $15,000 check, an unknown number of "deposits," remodeling construction work for the restaurant, and that he then worked for the restaurant as a chef and manager. All of this, Mr. Mancini stated, covered the

---

[2]The operating agreement Mr. Addonisio was referring to was a record of Villa Bellini Ristorante, LLC's, which stopped operating in 2014 when Villa Bellini was established.

entirety of his required initial investment. Mr. Mancini was of the view that this was verbally agreed to among Villa Bellini's shareholders. Although early corporate records and tax returns reflected that Mr. Mancini was the president and a one-fourth owner of Villa Bellini, the gentleman who prepared those early records[3] testified that Mr. Mancini had been his only source of financial information for the corporation at the time they were made. He further recalled:

> Well, in the beginning I was trying to come up with the balance sheet to show the shareholders' contribution and I could see all the deposits being made from all the different shareholders, and I asked Mr. Mancini where his was and where they were, where they were coming from, and he mentioned that he gave – he paid with credit cards some expenses for – during the construction [of the restaurant], and then he gave liquor, wine – more wine to the company for his share.
>
> And I also asked for proof of all that meaning statements from the credit card accounts, and inventory, and never got it. Actually, to this day I never saw any evidence.

As Mr. Mancini's counsel expressed in his concluding remarks to the trial court, "this company was run very loosely. It wasn't run with the oversight it probably should have [had]."

The circuit court adjudicated the dispute over Mr. Mancini's ownership from the evidence presented at the show cause hearing.[4] In its order, the court found

---

[3]The individual was not a certified public accountant but rather an enrolled agent credentialed by the Internal Revenue Service.

[4]We recognize that the court attempted, in its remarks at the conclusion of the show cause hearing, to leave open the possibility that Mr. Mancini might owe more money for the purchase of his shares or, conversely, that he might be owed money from Villa Bellini for providing labor and wine to the restaurant. However, the court's oral pronouncement and subsequent written order leave no room to doubt that the court made a factual determination that Mr. Mancini was and is a shareholder of Villa Bellini.

that Villa Bellini had failed to show good cause why a writ of mandamus should not issue. The court's order further elaborated, "based upon the evidence and law presented, [Mr. Mancini] need not rebut that Mancini is not a shareholder, since it has been demonstrated to the satisfaction of the conscience of this Court that he is and always has been a shareholder of Respondent, [Villa Bellini]." Thus, by obtaining a writ to allow an inspection of Villa Bellini's corporate books and records, Mr. Mancini also obtained an adjudication that he was, in fact, a shareholder of Villa Bellini.

II.

The standard of our review of a circuit court's order on a mandamus petition is somewhat multifaceted and depends, in part, upon how the lower court disposed of the petition. If the circuit court dismissed the mandamus petition as facially insufficient, we review the ruling de novo. See Anthony v. State, 277 So. 3d 223, 225 (Fla. 2d DCA 2019) (citing Asay v. State, 210 So. 3d 1, 22 (Fla. 2016)); Chandler v. City of Greenacres, 140 So. 3d 1080, 1083 (Fla. 4th DCA 2014) (citing Barnett v. Antonacci, 122 So. 3d 400, 404 (Fla. 4th DCA 2013)). If the circuit court determined the petition was facially sufficient and adjudicated it on the merits, as it did here, then we would ordinarily review the ruling for an abuse of discretion. See Brown v. Jones, 229 So. 3d 397, 397 (Fla. 1st DCA 2017) (citing Rosado v. State, 1 So. 3d 1147, 1148 (Fla. 4th DCA 2009)); Bd. of Cty. Comm'rs Broward Cty. Fla. v. Parrish, 154 So. 3d 412, 417 (Fla. 4th DCA 2014). We afford that deferential review because the decision to grant mandamus relief is discretionary, not absolute. See Topps v. State, 865 So. 2d 1253, 1257 (Fla. 2004). To the extent that the circuit court's adjudication of a mandamus petition turns on an issue of law, however, we would review that decision de novo. See

Parrish, 154 So. 3d at 417 (quoting Harvard ex rel. J.H. v. Village of Palm Springs, 98 So. 3d 645, 647 (Fla. 4th DCA 2012)).

"In order to be entitled to a writ of mandamus the petitioner must have a clear legal right to the requested relief, the respondent must have an indisputable legal duty to perform the requested action, and the petitioner must have no other adequate remedy available."[5] Huffman v. State, 813 So. 2d 10, 11 (Fla. 2000); see also Radford v. Brock, 914 So. 2d 1066, 1067 (Fla. 2d DCA 2005) (quoting Smith v. State, 696 So. 2d 814, 815 (Fla. 2d DCA 1997)). Our court summarized the parameters of mandamus proceedings in Radford:

> "When a trial court receives a petition for a writ of mandamus, its initial task is assessing the petition to determine whether it is facially sufficient. If it is not facially sufficient, the court may dismiss the petition." Davis v. State, 861 So. 2d 1214, 1215 (Fla. 2d DCA 2003) (citations omitted). If the petition is facially sufficient, the court must issue an alternative writ of mandamus requiring the respondent to show cause why the writ should not be issued. Moore v. Ake, 693 So. 2d 697, 698 (Fla. 2d DCA 1997); Conner v. Mid–Florida Growers, Inc., 541 So. 2d 1252, 1256 (Fla. 2d DCA 1989). If the petition and answer to the alternative writ raise disputed factual issues, the trial court must resolve these issues upon evidence submitted by the parties.

914 So. 2d at 1067-68.

---

[5]There is no question that if Mr. Mancini is a shareholder of Villa Bellini, Villa Bellini has a clear and indisputable statutory duty to allow him to inspect its corporate records in accordance with section 607.1602.

Now those who may be familiar with the arcana of mandamus jurisprudence[6] might think the use of a mandamus petition in a private business dispute between private individuals is a bit—odd.  And indeed it is.  Cf. State ex rel. Glynn v. McNayr, 133 So. 2d 312, 315-16 (Fla. 1961) (noting the "narrow confines of the established restrictions on mandamus as a remedy to compel official action"); Conner v. Moran, 44 Fla. L. Weekly D2052 (Fla. 1st DCA Aug. 9, 2019) ("The writ of mandamus is available only to compel a non-discretionary ministerial duty by a public official where the petitioner has no legal remedy to obtain the relief sought." (first citing Hatten v. State, 561 So. 2d 562, 563 (Fla. 1990); and then citing Rhea v. Dist. Bd. of Trs. of Santa Fe College, 109 So. 3d 851, 855 (Fla. 1st DCA 2013))); Kuehl v. Bradshaw, 954 So. 2d 653, 655 (Fla. 4th DCA 2007) ("Mandamus is proper to compel a public official to perform a ministerial duty."); Sancho v. Joanos, 715 So. 2d 382, 385 (Fla. 1st DCA 1998) ("Mandamus issues to require the performance of a ministerial duty imposed by law on a public official." (citing City of Coral Gables v. State ex rel. Worley, 44 So. 2d 298, 300 (Fla. 1950))).  Our court once held that mandamus could not lie against a former assistant public defender who later became a private practitioner for the very reason that he "is a private citizen and not a government official."  See Hall v. Liebling, 890 So. 2d 475, 476 (Fla. 2d DCA 2004); see also Donahue v. Vaughn, 721 So. 2d 356, 357 (Fla. 5th DCA 1998) ("[M]andamus does not lie to require a private citizen, appellee, to perform a ministerial duty required by law." (internal quotations omitted)).  Nevertheless, there is a long running vein in Florida law that recognizes mandamus

---

[6]Cf. Doe v. State, 210 So. 3d 154, 170 (Fla. 2d DCA 2016) (Lucas, J., dissenting) (citing law review commentary and remarking that the origin and purpose of the writ of mandamus remains "somewhat unobvious and unexamined").

relief for shareholders in private corporations who wish to inspect their corporation's books and records. See Fla. Military Acad., Inc. v. State ex rel. Moyer, 174 So. 3, 4-5 (Fla. 1937) (affirming issuance of a writ of mandamus to authorize a shareholder to inspect the books and records of a corporation); Soreno Hotel Co. v. State ex rel. Otis Elevator Co., 144 So. 339, 342 (Fla. 1932) (holding that a shareholder may seek a writ of mandamus to compel a corporation to allow him access to its records). We are compelled to follow this vein, though it seems difficult to reconcile within the larger body of mandamus law.[7]

---

[7]Courts throughout the country have been divided on this issue for some time. Compare Fla. Military Acad., 174 So. 3 (recognizing mandamus relief for a ten percent shareholder to inspect his corporation's books and records); Feuer v. Merck & Co., Inc., 187 A.3d 873, 881 (N.J. Super. Ct. App. Div. 2018) (observing that the "right" of shareholders to inspect corporate records under New Jersey's common law "was historically secured by a writ of mandamus" but the issuance of the writ was "still subject to the exercise of the court's discretion"); Treat v. Inhabitants of Middletown, 8 Conn. 243, 246 (Conn. 1830) ("A *mandamus* lies to compel any person, corporation, or inferior court to do a particular act, which they neglect."), with Hall, 890 So. 2d at 476 (holding that mandamus could not lie against a private citizen); Am. Asylum v. Phoenix Bank, 4 Conn. 172, 178 (Conn. 1822) (expressing doubt that mandamus would be available for plaintiffs to subscribe to a charitable corporation's shares; "The writ of *mandamus* lies to enforce the execution of an act . . . and, regularly, issues only in cases, relating to the public and the government . . . . It never lies to restore to a private office, or to execute a private right . . . ."); Shipley v. Mechanics' Bank, 10 Johns. 484, 485 (N.Y. 1813) ("The applicants have an adequate remedy, by a special action on the case, to recover the value of the stock, if the bank have [sic] unduly refused to transfer it. There is no need of the extraordinary remedy by *mandamus*, in so ordinary a case. . . . It is not a matter of public concern, as in the case of public records and documents . . . .").

It may be that a writ of mandamus is still appropriate to enforce certain corporate ministerial duties because, as the Florida Supreme Court once explained, "[a] corporation being the recipient of a franchise from the state, it and its officials are subject to judicial control by means of the writ of mandamus." Soreno Hotel, 144 So. at 340. One could argue, though, that the proliferation of corporate organizations over the past century, the relative ease with which a corporate entity can now be created, and the panoply of legal remedies available to shareholders in modern civil practice—declaratory relief, injunctive relief, a direct action to apply for an expedited court order under section 607.1604—render this extraordinary writ an ill-suited procedural relic for this kind of private controversy.

That alone, however, does not resolve this appeal. While we are bound to recognize the potential availability of mandamus relief for a corporate shareholder who has been deprived of his or her statutory right to inspect a corporation's books and records, we cannot ignore the legal boundaries that have been set for this extraordinary writ's reach. Mandamus is available "only to enforce a right that is both clear and certain." Fla. League of Cities v. Smith, 607 So. 2d 397, 400 (Fla. 1992). "Mandamus may not be used to establish the existence of such a right, but only to enforce a right already clearly and certainly established in the law." Id. at 401; see also McNayr, 133 So. 2d at 316 ("The purpose of the remedy [of mandamus] is not to establish a legal right. Its function is to enforce a right which has already been clearly established."). The clarity and certainty required for mandamus relief ordinarily prevents the issuance of a writ of mandamus in cases where there is an underlying substantive fact in dispute, as Florida case law illustrates.

For example, in Morse Diesel International, Inc. v. 2000 Island Boulevard, Inc., 698 So. 2d 309 (Fla. 3d DCA 1997), a condominium association (Williams Island) that was in protracted litigation with a general contractor filed a separate petition for a writ of mandamus to direct the clerk of the circuit court to disburse a cash bond that the association had previously posted in connection with the litigation. The association argued that the contractor's claim of lien on the underlying property had expired so that the association was entitled to the return of its funds. Id. at 311. The circuit court issued the writ, but the appellate court reversed, holding that the association failed to establish a clear legal right to mandamus "where the clerk's answer and affirmative defenses created a genuine issue of fact about whether Morse Diesel's claim of lien had

- 10 -

expired and/or been satisfied." Id. at 312. "In granting the writ, we think that the court improperly adjudicated rather than enforced an established right to these funds by Williams Island." Id.

Similarly, in Immer v. City of Miami, 898 So. 2d 258 (Fla. 3d DCA 2005), the Third District affirmed a circuit court's denial of a petition for writ of mandamus where the petitioner sought to direct the City of Miami to cancel a building permit that had been issued to a homeowners' association.

> The petition and attachments reveal that there is a disputed factual issue in the case. In applying for the building permit, the Association swore that it was the owner of the land on which the proposed gatehouse was to be constructed. Immer asserts that he is a lot owner in the Moorings and an attorney specializing in real estate. He states that in his opinion the operative real estate documents make the lot owners (not the Association) the owners of the land on which the gatehouse is to be constructed.
>
> *Since there is a factual dispute regarding ownership of the property, mandamus is not an available remedy.* "[R]elief cannot be afforded by mandamus where the right to which relator claims he clearly is entitled depends on the determination of controverted question of fact[]." State ex rel. Blatt v. Panelfab Int'l Corp., 314 So. 2d 196, 198 (Fla. 3d DCA 1975).

Id. at 259 (alterations in original) (emphasis added).

As Mr. Mancini acknowledged in the proceedings below, his status as a shareholder was not only controverted, it was a preliminary factual issue the circuit court had to decide in order to adjudicate the merits of his mandamus petition. But a mandamus proceeding is not the appropriate mechanism to resolve that kind of factual dispute. See L.B. Price Mercantile Co. v. Gay, 44 So. 2d 87, 89 (Fla. 1950) ("It is seldom proper to resort to mandamus when determination of controverted questions of

- 11 -

fact is necessary in an ascertainment of the rights of the parties."); Immer, 898 So. 2d at 259; Morse Diesel, 698 So. 2d at 312; State ex rel. Blatt, 314 So. 2d at 198 ("[R]elief cannot be afforded by mandamus where the right to which relator claims he clearly is entitled depends on the determination of controverted questions of facts." (first citing State ex rel. H.W. Metcalf Co. v. Martin, 46 So. 424, 426 (Fla. 1908); and then citing Sanitarians' Registration Bd. v. Solomon, 148 So. 2d 744, 749 (Fla. 1st DCA 1963), quashed, 155 So. 2d 353 (Fla. 1963))).

The circuit court's convening a show cause hearing did nothing to rectify this error. Contrary to Mr. Mancini's argument here and below, the mandamus show cause hearing that we recognized in Radford was never meant to be a surrogate for a trial on the merits over disputed, substantive factual issues concerning the ownership interests in a private corporation.[8] Rather, the show cause hearing must necessarily be limited to the confines of what can be appropriately adjudicated in a mandamus proceeding: that is, whether the petitioner has a clear legal right to the requested relief, whether the respondent has an indisputable legal duty to perform the requested action, and whether the petitioner has any other legal remedy. See Huffman, 813 So. 2d at 11;

---

[8]The only Florida case we have found where a court arguably recognized that a mandamus proceeding could be utilized to determine a shareholder's ownership interest was Farro v. Simplex Medical Systems, Inc., 748 So. 2d 342 (Fla. 3d DCA 2000). The Third District's one-paragraph opinion in Farro reversed a circuit court's denial of a mandamus petition because "contrary to the finding below, the evidence as to the only disputed fact unequivocally establishes that Simplex, Inc. received the required consideration for the issuance of the shares of stock which are now in question." Id. at 342. The Farro opinion neither mentioned nor addressed the legal elements necessary to establish a right to mandamus relief, and so we do not find Farro particularly persuasive on this issue. Instead, we think the better reasoned approach would be to follow the law's general aversion to deciding disputed factual issues in mandamus proceedings.

Radford, 914 So. 2d at 1067. To hold otherwise, to extend the ambit of a show cause hearing in a mandamus proceeding to the extent Mr. Mancini suggests, would expand the reach of the writ beyond its historic demarcations.

It would also radically alter the burden of persuasion in a disputed civil controversy. As Villa Bellini points out, Mr. Mancini was the petitioner in the proceeding below; and yet, it was Villa Bellini, the respondent, that bore the burden of persuasion at the show cause hearing. Cf. Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, 56 (2005) ("We therefore begin with the ordinary default rule that plaintiffs bear the risk of failing to prove their claims." (citation omitted)); Arthur v. Unkart, 96 U.S. 118, 122 (1877) ("The burden of proof is upon the party holding the affirmative of the issue." (citing Johnson v. Plowman, 49 Barb. 472 (N.Y. 1867))); Meneses v. City Furniture, 34 So. 3d 71, 73-74 (Fla. 1st DCA 2010) ("As a rule, the burden of persuasion is with the party who initiates the proceeding, and remains with that party to establish the material elements of recovery." (citing Smith's Bakery, Inc. v. Jernigan, 134 So. 2d 519, 521 (Fla. 1st DCA 1961))); see also 2 J. Strong, McCormick on Evidence § 337 (5th ed. 1999) ("The burdens of pleading and proof with regard to most facts have been and should be assigned to the plaintiff who generally seeks to change the present state of affairs and who therefore naturally should be expected to bear the risk of failure of proof or persuasion."). More than that, Villa Bellini's burden before the circuit court required it to prove the proverbial negative that Mr. Mancini was *not* a shareholder. That is a startlingly inverted way to resolve a factual controversy in a proceeding that is "seldom proper" for resolving factual controversies. See Gay, 44 So. 2d at 89.

We are also of the opinion that the limited factual inquiry a court undertakes in a mandamus show cause hearing must align with another important limitation of mandamus relief. A writ of mandamus is not available when the petitioner has an adequate legal remedy. Huffman, 813 So. 2d at 11; see also Anthony, 277 So. 3d at 225 ("To be facially sufficient, a petition for writ of mandamus must also show the petitioner has no adequate remedy at law." (citing Davis, 861 So. 2d at 1216)). If, as it seems, Mr. Mancini, Villa Bellini, and Villa Bellini's shareholders were in doubt about Mr. Mancini's status as a shareholder, chapter 86 of the Florida Statutes afforded them the right to obtain a declaratory judgment to have that issue definitively resolved. See, e.g., Hyman v. Daoud, 194 So. 3d 392, 395 (Fla. 3d DCA 2016) (affirming circuit court's declaratory judgment of the extent and nature of a corporation's ownership); Price v. Rome, 222 So. 2d 252, 253 (Fla. 3d DCA 1969) (affirming declaratory judgment that determined that plaintiff owned 40,000 shares of a corporation); cf. Telestrata, LLC v. NetTALK.com, Inc., 126 F.Supp.3d 1344, 1350 (S.D. Fla. 2015) ("The question of rightful ownership of securities is a proper case or controversy for resolution by a [federal] declaratory judgment claim." (citing Linker v. Custom-Bilt Mach. Inc., 594 F.Supp. 894, 901 (E.D. Pa. 1984))). By deciding Mr. Mancini's disputed status as a shareholder of Villa Bellini, the circuit court erroneously crafted the legal remedy of a declaratory judgment from a mandamus petition.

III.

We hold that the circuit court erred when it utilized a mandamus show cause hearing to resolve the disputed fact of Mr. Mancini's ownership interest in Villa Bellini. We further hold that that error was harmful. As we have already discussed,

- 14 -

adjudicating the preliminary disputed factual issue of Mr. Mancini's share ownership in a show cause hearing effectively switched the burden of persuasion that he, as a petitioner or plaintiff, would have ordinarily had in a civil case. And the error allowed Mr. Mancini to obtain a legal remedy—a judicial declaration that he is a shareholder—in a proceeding that is supposed to be reserved for cases where no adequate legal remedy is available.

Mr. Mancini may very well have an ownership interest in Villa Bellini. In a proper proceeding, he may end up proving what the circuit court determined in his mandamus petition. All we hold today is that this kind of factual dispute is not one that can be resolved in a mandamus show cause hearing. Accordingly, we reverse the order below and remand this case for proceedings consistent with this opinion.

Reversed and remanded.

SMITH, J., and CASE, JAMES R., ASSOCIATE SENIOR JUDGE, Concur.