# Third District Court of Appeal

## State of Florida

Opinion filed March 23, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-2984
Lower Tribunal No. 12-44972
_____

**Kelly Hyman,**
Appellant,

vs.

**Arnold Daoud,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, John W. Thornton, Jr., Judge.

Crabtree & Auslander, and John G. Crabtree, Charles M. Auslander, Brian C. Tackenberg and George R. Baise, Jr., for appellant.

Zarco Einhorn Salkowski & Brito, P.A., and Robert Zarco, Alejandro Brito and Gabriel Estadella, for appellee.

Before SHEPHERD, LAGOA and SCALES, JJ.

SCALES, J.

Appellant and plaintiff below, Kelly Hyman ("Hyman"), appeals from a final declaratory decree in favor of her father, appellee and defendant below, Arnold Daoud ("Daoud").

We affirm the trial court's extensive and well-reasoned final decree in all respects. We write only to address one issue raised by Hyman: whether the remedy decreed in the trial court's final decree comports with Florida's Declaratory Judgment Act, i.e. Chapter 86 of the Florida Statutes.

A recitation of the relevant facts will assist in putting our holding in context.

## I. Facts

In April of 2005, Hyman incorporated Bouganvilla Investments, Inc. (the "Corporation") for the purposes of acquiring real property in Miami Beach (the "Property").[1]

In the incorporation papers filed with Florida's Division of Corporations, Hyman was identified as the incorporator, a director, and the Corporation's registered agent.

The purchase price for the Property was $637,500. Hyman personally guaranteed the Corporation's purchase money mortgage, which secured a $500,000 loan. The remaining portion of the purchase price and all closing costs

---

[1] The Property consisted of a residence, with some associated rental apartments.

were paid by Titan Signs, Inc., a corporation owned and controlled by Hyman's father, Daoud.

After the Corporation purchased the Property in January of 2006, Daoud moved into the Property as his residence and Daoud managed the associated rental apartments. Also, Daoud's trust, while not having any direct ownership interest in the Corporation, paid any shortfall for expenses related to the Property that collected rents did not cover.

In 2012, Hyman filed a multi-count complaint against Daoud, his trust, and Titan Signs, alleging that Hyman was the sole shareholder of the Corporation, and that Titan Sign's contribution to the purchase price of the Property was either a gift or an advance on Hyman's inheritance.[2]

Relevant to this appeal is Count VII of Hyman's Fourth Amended Complaint in which Hyman sought declaratory relief from the trial court. Specifically, Hyman alleged that a dispute existed as to her ownership interest in, and the ownership structure of, the Corporation. As a remedy, Hyman sought a decree declaring that Hyman owned one hundred percent of the stock of the Corporation. Hyman alternatively sought a declaration of "the ownership structure of the corporation" and "such other relief as the Court deems just and equitable."

---

[2] Hyman's Fourth Amended Complaint also contained counts seeking an accounting from Daoud as to all rents and expenses associated with the Property and the Corporation. Hyman also sought to eject Daoud from the Property.

3

The parties agreed to sever Count VII of Hyman's Fourth Amended Complaint from the remaining counts, and have that Count heard by the trial court. The trial court's complex business litigation section conducted a two-day, non-jury trial, and rendered a thirteen-page final decree that detailed the extensive evidence adduced at trial and that made extensive findings of fact and conclusions of law.

During the trial, both Hyman and Daoud testified regarding their perception of the Corporation's ownership. Daoud testified that his intent was that his trust own all shares, while Hyman testified that she was the sole owner of all the Corporation's shares.

In its final decree, the trial court declared, among other things, that Titan Sign's payment toward acquisition of the Property was not an advancement of Hyman's inheritance, and that:

1. Hyman owns fifty percent of the Corporation;

2. Daoud owns fifty percent of the Corporation;

3. Both Hyman and Daoud's shares in the Corporation are to be held by Daoud's trust;

4. Daoud is entitled to reside in the Property for the remainder of his life;

5. Both Hyman and Daoud's consent is required in order to sell or further encumber the Property; and

6. During his life estate, Daoud is personally responsible both for renting the Property's apartments and for all expenses related to the Property.

The trial court also retained jurisdiction to appoint a special magistrate to execute necessary documents and to resolve other specified disputes. Finally, the trial court determined that its decree mooted the remaining counts asserted by Hyman in her Fourth Amended Complaint.

Hyman appeals this final decree, asserting that: (i) the trial court's factual findings were erroneous, (ii) the trial court erred in granting Daoud a life estate to the Property, and (iii) the trial court's decreed remedy – relating to the corporate stock – was not authorized under Chapter 86 of the Florida Statutes, Florida's declaratory judgment act.

## II. Analysis

We affirm the final decree in all respects. We write only to address Hyman's argument that the extensive remedies decreed by the trial court are somehow beyond the permissible scope of remedies authorized by chapter 86.

First, we note that the trial court provided the *precise* declaration sought by Hyman in her complaint, *to wit:* a declaration of the ownership structure of the Corporation. While the result was not what Hyman had hoped for, it can hardly be argued that the trial court did not accomplish the very task for which Hyman employed Florida's declaratory judgment act.

Section 86.011 expressly provides Florida's circuit courts with jurisdiction ". . . to declare rights, status and other equitable or legal relations. . ." § 86.011, Fla. Stat. (2014). The statute specifically authorizes trial courts to declare the existence or nonexistence of any power, privilege or right, and authorizes the trial court to make the appropriate factual determinations necessary in order to make such decrees. Further, parties seeking declaratory relief may seek ". . . additional, alternative, coercive, subsequent or supplemental relief . . ." in the declaratory judgment action. § 86.011(2), Fla. Stat. (2014).

In this case, because the parties had not memorialized the Corporation's ownership with a written shareholder agreement, articles of incorporation, or a corporate resolution, the trial court was called upon to adjudicate the Corporation's ownership structure in light of the parties' vastly different views of the Corporation's ownership.

The evidence showed the trust's extensive involvement with the Property, despite having no ownership interest in either the Property or the Corporation.[3] The trial court heard evidence that it was Daoud's desire that all corporate shares be owned by the trust, although that desire was never effectuated. Daoud's version

---

[3] Complicating this issue was the seeming lack of formality involved in the maintenance of the trust. In fact, the trial court expressed concern that the trust had no identifiable trustee.

of Titan Sign's involvement with the Property's acquisition was fundamentally at odds with Hyman's version.

Recognizing that tangled and competing interests were involved in this matter, Hyman's Fourth Amended Complaint names at least four defendants in Count VII, *all* of whom, Hyman alleged, claimed to own one hundred percent of the Corporation. In sum, this was a corporate mess which the trial court aptly cleaned up.

In carrying out the statutorily mandated duties prescribed by Florida's declaratory judgment act, Florida's trial courts must be afforded broad, albeit not unbridled, remedial authority. See Martinez v. Scanlan, 582 So. 2d 1167 (Fla. 1991). Otherwise, the trial court's extensive declarations would be of little value to those seeking court intervention to resolve doubts regarding their rights, status and legal and equitable relations. Trafalgar Developers, Ltd. v. Morley, 305 So. 2d 274 (Fla. 3d DCA 1974).

**III. Conclusion**

In this case, the trial court accomplished precisely what it was authorized to do by statute, and precisely what it was called upon to do by the parties: to declare the ownership structure of the Corporation.

Affirmed.